## NEWPORT COUNTY.

15   579
17   801

15   579
19   207

15   579
21   431

### DANIEL A. CHAPIN et al. vs. JEREMIAH BROWN.

Owners of land in a country town platted it into sixty house-lots with streets, and recorded the plat. A. purchased one of the lots by reference to the plat. At the time of purchase the street on which the purchased lot fronted was in fact closed by a gate, though the plat showed it unobstructed. A. removed the gate, whereupon B., a purchaser of lots adjoining A.'s, erected a gate across the street on the line between his lots and A.'s.

On a bill in equity brought by A. to enjoin B. from maintaining the gate, —

*Held*, that A. was entitled to the relief sought.

*Held*, further, that the fact of A.'s deed conveying to A. no part of the street on which his lot fronted was immaterial.

Other streets on the plat were obstructed by fences, but it did not appear that A. had, or would have, occasion to use these streets.

*Held*, that as to these streets, A., notwithstanding his technical right to free passage over them, might properly be left to his remedy at law.

BILL IN EQUITY for an injunction. The facts involved are stated in the opinion of the court.

*Nicholas Van Slyck & Cyrus M. Van Slyck*, for complainants.

*William P. Sheffield*, for respondent. At the time of the conveyance, no way known as North Avenue had been opened along the northerly side of lot No. 31. There was a wall and gate across what is indicated as the east end of what is called North Avenue, and a high impassable bank at the westerly end of the same, which then made what is called North Avenue impassable. The defendant and one William J. Brightman became the owners of all other lands indicated on the plat by title prior to the acquisition of title by the plaintiff, but subsequently to the acquisition of the title of the plaintiff's grantor.

The defendant concedes that a grant bounded on a highway *primâ facie* terminates at the centre of the highway, and gives the grantee a right of way through to a connecting thoroughfare. But this presumption may be rebutted, and the grant limited to the line of the way, whenever such is the intention of the parties gathered from the conveyance. This intention may be gathered from : —

1. The location of the land. Lot 31 was situated on the side of a highway, and was open to it and bounded by it. Then " North Avenue" was not only not open for travel, but was actually impassable. And it is a familiar rule of law that parties purchasing and selling land must be supposed to have contracted with reference to the then existing state of the property.

2. The appearance of the premises at the time of the grant.

The general rule is that, in reference to natural or artificial objects, all grants are made with reference to an actual view of the premises by the parties. Tyler on Boundaries, &c. p. 119, and cases there cited.

3. The inference to be drawn from the boundary lines of the lot granted as they are indicated upon the plat.

In *Codman* v. *Evans et al.* 1 Allen, 443, 447, the court says: " Where there is nothing to indicate the contrary, the external lines of a lot as marked on a plan referred to are presumed to be the boundaries of the lot. In this deed there is nothing to indicate the lot extends beyond the lines, but the clauses referred to indicate quite plainly that the fee was not granted in any part of the passage-way."

The question, whether a grantee takes an interest in a street, is a question of construction in each particular case, and depends upon the intention of the parties expressed in the descriptive parts of the deed, explained and illustrated by all the other parts of the conveyance, and by the localities and the subject-matter to which it refers. *Webber* v. *Railroad Co.* 2 Met. 147, 151.

The reference to the plat in the case at bar does not enlarge the particular grant, but only serves as a further means of identifying the particular thing granted. *Tyler* v. *Hammond*, 11 Pick. 193, 211, *sq.; Brainard* v. *R. R. Co.* 12 Gray, 407, 410 ; *Jackson* v. *Hathaway*, 15 Johns. Rep. 447.

The same doctrine is also held in *Harris* v. *Elliott*, 10 Pet. 25, 52, *sq.* " Where land is described as bounded upon a street in the rear which is not actually open, but merely laid down upon a map, and there is also a front access, there is not an implied grant of way in such rear street, or a covenant to open the same. 1 Hilliard on Real Property, p. 349, § 118.

In *Tyler* v. *Hammond*, 11 Pick. 211, it is said : " Where the lot conveyed is described by metes and bounds, and they clearly exclude the road, I apprehend that it cannot be maintained that any part of the soil or freehold of the road will pass. If by the terms of the description the road is necessarily excluded, it is equivalent to an express declaration that no part of the road is intended to be conveyed, and it is perfectly clear that the fee in the road cannot pass as appurtenant to the adjoining land." See, also, *Jackson* v. *Hathaway*, 15 Johns. Rep. 447 ; *English* v. *Brennan*, 60 N. Y. 609 ; *Bank* v. *Nichols*, 64 N. Y. 65 ; *Insurance Co.* v. *Stevens*, 87 N. Y. 287 ; *Sibley* v. *Holden*, 10 Pick. 249 ; *Smith* v. *Slocumb*, 9 Gray, 36 ; *Cottle* v. *Young*, 59 Maine, 105.

A plat annexed to a grant cannot control or enlarge the calls in a deed. *Literary Fund* v. *Clark*, 9 Ired. 58.

4. The calls in the deed in the case at bar clearly exclude every part of North Avenue.

The point of beginning is at the northeasterly corner of the lot to be conveyed, in the line of *the southerly side* of North Avenue, thence along the highway one hundred and twenty-five feet for a corner ; then by various courses to the *south line* of North Avenue ; then by said North Avenue to the place of beginning.

*Providence, July* 23, 1887. DURFEE, C. J. This bill is brought against the defendant by Daniel A. Chapin as owner, and by John H. Jackson as lessee, of a lot of land in Tiverton, to have the defendant enjoined from maintaining fences across certain avenues, so called, over which they claim a right of way as appurtenant to said lot. The lot is parcel of a larger tract, formerly belonging to William C. Davol, Jun., Alexander D. Easton, and James T. Milne, who in August, 1871, caused the same, together with an adjoining tract belonging to them and one Joseph Osborne, who coöperated with them, to be platted, in the language of the bill, " into lots and avenues on one plat, described as ' a plan of house-lots surveyed by Benjamin C. Borden for Davol, Easton, and Milne, and Joseph Osborne,' and on or about the first day of January caused said plat to be recorded " in the town clerk's office of said town of Tiverton. The bill alleges that thereafterwards Davol, Easton, and Milne sold parts of the first-mentioned tract, and described them, in the deeds whereby they conveyed them, as

lots on said plat, and that Davol, Easton, Milne, and Osborne sold parts of the last-mentioned tract, and described them in the deeds whereby they conveyed them as lots on said plat, reference thereto being specifically made, the complainant Chapin being a purchaser by mesne conveyances of one of the lots so sold, and the complainant Jackson lessee thereof under him. The lots are delineated on the plat as intersected by four avenues, three running east and west from a highway on the east to a highway on the west, and called North Avenue, Middle Avenue, and South Avenue, and one running north and south from said North Avenue to said South Avenue, about midway between said highways, and having no name. The bill avers that the purchasers of lots as aforesaid became entitled, under their deeds referring to said plat, to a right of way over all said avenues as appurtenant to their lots, and prays that the defendant may be enjoined to remove the fences from said avenues and keep them removed.

The defendant sets up in his answer that he is the owner by various conveyances of the land lying next west of lot 31 ;[1] that, when he purchased the same, there was a wall across the east end of North Avenue, so called, with a gate therein, by which the land was protected from intrusion from the highway, and that this protection was an inducement to his purchase; that Chapin subsequently removed said wall and gate, and that thereupon he, the defendant, erected a fence with gate across North Avenue, so called, in the line of the boundary between his land and lot 31, for the protection of his land; that said North Avenue was never laid out or fenced out as a street or way, or laid open, or contemplated to be laid open, for the benefit of lot 31, and was never in contemplation of any seller or buyer of any lot in the plat as being in any way appurtenant to lot 31.

The plat adduced in evidence shows that the two tracts of land as platted contained sixty-six numbered lots. Quite a number of them came to the defendant by deeds referring to the plat, designating the lots by their number thereon, and mentioning the avenues by way of boundary or description, and constitute the land belonging to him lying west of lot 31. The complainant Chapin

---

[1] The same land as that spoken of in *Brightman* v. *Chapin*, *ante*, p. 166.

holds lot 31 under deeds referring to the plat, designating the lot by its number, and mentioning North Avenue by way of boundary or description. The complainants maintain that by reason of these sales and conveyances so made the complainant Chapin acquired lot 31 with a right of way appurtenant thereto over all the avenues delineated on the plat, and the defendant took the lots conveyed to him, and whatever interest, if any, he acquired in the said avenues, subject to said right and all the consequences thereof. The question is, whether the complainants' position is tenable.

In *Breed* v. *Cunningham*, 2 Cal. 361, decided in 1852, the law is thus laid down : " Where lots are sold as fronting on or bounded by a certain space, designated in the conveyance as a street, the use of such space as a street passes as appurtenant to the grant, and vests in the grantee, in common with the public, a right of way over said street." And see *Smiles* v. *Hastings*, 24 Barb. S. C. 44; 22 N. Y. 217 ; *Cox* v. *James*, 45 N. Y. 557.

In *The City of Dubuque* v. *Maloney*, 9 Iowa, 450, decided in 1859, the court held the following language, to wit: " If the owner of land lays out a town and exhibits a plan thereof, on which are represented various plats of space or vacant ground, such as streets, alleys, squares, quays, etc., and the lots are sold with reference to the plan, the purchasers of the lots acquire, as appurtenant to the same, every easement, privilege, and advantage which the plan represents as belonging to them. The sale and conveyance imply a grant or covenant to the purchasers that the streets and other public places indicated as such upon the plan shall be forever open to the use of the public, free from all claim or interference of the proprietor inconsistent with such use." Citing *Rowan's Executors* v. *Town of Portland*, 8 B. Mon. 232 ; *Livingston* v. *The Mayor of New York*, 8 Wend. 85, 106 ; *Wyman* v. *The Mayor of New York*, 11 Wend. 486.

In *Bartlett* v. *Bangor*, 67 Me. 460, decided in 1878, the court says: " When the owner of land within or near to a growing village or city divides it into streets and building lots, and makes a plan of the land thus divided, and then sells one or more of the lots, he thereby annexes to each lot sold a right of way in the streets, which neither he nor his successors in title can afterward

interrupt or destroy; and we think reason and the weight of authority are in favor of holding that such a platting and selling of lots constitute an incipient dedication of the streets to the public, which the owner of the land cannot afterward revoke. The dedication is not complete till the streets are accepted by competent authority, or the public has used them for at least twenty years. But, so far as the owner of the land is concerned, such acts constitute a proposition to dedicate, which he cannot afterward withdraw." And see Dillon on Municip. Corp. §§ 503–505; Angell on Highways, § 149; *The City of Indianapolis* v. *Kingsbury*, 101 Ind. 200.

In *Taylor* v. *Helper*, 2 Hun, 646, decided in 1874, the rule is stated thus: "When the proprietor of land surveys, maps, and lays out such land into lots, numbering them, with streets designated, named, and put down on the map, as between him and a grantee of a lot bounded on one of the designated streets, his conveyance is *per se* a dedication of the street to the use of his grantee as a street; as between the grantor and grantee, it is a street, which the latter has a right to use as such as soon as the conveyance is made to him. By force of the grant, an easement is attached to the land granted, which thereby becomes an appurtenant, viz., a right of way on and over the street, designated as a street for the use of the lot conveyed." And see *De Witt* v. *Village of Ithaca*, 15 Hun, 568; *Potter* v. *Iselin*, 31 Hun, 134; *Cox* v. *James*, 45 N. Y. 557; *In re Eleventh Street*, 81 N. Y. 436.

The *ratio decidendi* of these cases is this: that, when the grantee of a lot so platted purchases it, the existence of the streets as platted, inasmuch as they add value to the lot by the conveniences or advantages which they promise, is an inducement to the purchase, and so enters into the consideration as between the grantor and grantee, and operates by way of implied covenant, implied grant, estoppel, or dedication, whichever way of operation may be the truer, to secure to the grantee a right of way over such platted streets, and reciprocally to subject any interest which the grantee may acquire therein to a right of way for the benefit of the other platted lots. And see *Steam Engine Co.* v. *Steam Ship Co.* 12 R. I. 448; *Grogan* v. *Town of Hayward*, 6 Sawyer, 498. In

some of the cases above cited the doctrine is not laid down as applicable to other than plats of urban or village lots; but we can see no reason why it should not equally apply, at least as between the lot-owners, to a plat of lots numbering sixty-six, delineated with intersecting streets. Indeed, that number of lots, if occupied with houses, would be a village.

The defendant directs our attention to the description of lot 31, as conveyed in the deed to Chapin, and contends that the convey-ance does not extend to the centre of North Avenue, on which lot 31 abuts, but covers only the land indicated as lying within the lines of lot 31 as platted. We do not think it makes any differ-ence to the question at issue here whether Chapin is owner of any portion of the fee of North Avenue or not; for, whether the fee of the avenue in front of his lot to the centre be in him or in the original owners of the land as platted, or in any intermediate gran-tee, whoever has it, according to the doctrine above laid down, holds it by force of the conveyances referring to the plat, subject to a right of way for the benefit of the lot-owners.

The defendant contends that, inasmuch as the east end of North Avenue was closed by a wall and gate when he purchased, he is en-titled either to have the wall and gate replaced, or to maintain his fence and gate across the avenue for the protection of his land. He adduces no authority for his position. Certainly, if every lot along North Avenue had been bought by a different person, it could not be maintained that every purchaser, if he chose, would have the right to obstruct the avenue by a fence and gate for the pro-tection of his lot. The language of the cases generally imports that the right which a purchaser of a lot on a plat of lots acquires to pass and repass over the platted streets or ways, is as full and unrestricted as if such streets or ways were public highways. North Avenue is represented on the plat as opened at the east end, and the plat does not indicate any obstruction anywhere in it which would lead a purchaser to suppose that it was intended to be incumbered by gates and fences, from the highway on the east to the highway on the west. Our conclusion is that the complain-ants are entitled to have the fence and gate removed from North Avenue, on which lot 31 abuts, and kept removed, and we will de-cree accordingly.

The complainants also ask for a decree for the removal of fences across other avenues. It does not appear that either of the complainants has occasion, or is ever likely to have occasion, to use the other avenues, and therefore, though they may have a technical right to pass and repass freely over them, it would seem that a removal of the fences therefrom would be no real benefit to them, while it would oblige the defendant to incur a great deal of additional trouble and expense to protect his property. In these circumstances we think we may properly leave the complainants, as to these fences, to their remedy at law, without ordering the removal.                               *Decree accordingly.*