George C. BITTING et al.

v.

David A. GRAY et al.

No. 2004–275–Appeal.

Supreme Court of Rhode Island.

May 1, 2006.

26

Deming E. Sherman, Esq., Providence, for Plaintiff.

James P. Marusak, Esq., Providence, for Defendant Joana Battaglia.

Jeremiah C. Lynch, Middletown, for Defendants David A. Gray, Alexander J. Gray, and Joana M. Battaglia.

Harris Weiner, Esq., Providence, for Defendant Beverly Robinson.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

Justice GOLDBERG, for the Court.

The plaintiff, George C. Bitting, individually and in his capacity as trustee of the George C. Bitting Revocable Trust (Bitting or plaintiff), is before the Supreme Court on appeal from partial summary judgment entered in the Superior Court in favor of the defendants, David A. Gray, Alexandra J. Gray (Gray), Joana M. Battaglia (Battaglia and collectively, defendants) and Beverley Robinson (Robinson or seller). The plaintiff requests that this Court vacate the judgment and remand the case to the Superior Court. For the reasons stated herein, we affirm in part and reverse in part.

### Facts and Travel

The facts, parties, claims and counterclaims in this dispute are numerous and

complex. This case concerns a clash over a section of roadway called Bayberry Lane, located in Middletown, and hinges on issues of ownership and the right to pass on the roadway without interference. It is undisputed that on July 5, 2000, Robinson sold plaintiff a parcel of land on the corner of Sachuest Way and Bayberry Lane. The deed from Robinson to plaintiff described the southern boundary of the property as,

"SOUTHERLY: On Bayberry Lane, so-called, a road or a way forty feet in width, three hundred twenty-two and two tenths (322.2) feet[.]"

Shortly after he acquired the lot, plaintiff asserted that a plat plan filed in October 1952 and a deed conveying his parcel to a predecessor in title in January 1953 established that he owned one-half the width of Bayberry Lane that extended along his property line and his right to use the entire length of the roadway.

### Background

The center portion of Bayberry Lane is a bluestone paved roadway, wide enough for a car to pass, with a grass border on each side. Robinson, the seller, retained a lot on Bayberry Lane, to the east of plaintiff's property. Directly across Bayberry Lane from plaintiff's lot is property owned by Gray; and to the east of the Gray lot is Battaglia's parcel. The only access to Battaglia's lot is over Bayberry Lane. At the eastern terminus of Bayberry Lane is the Norman Bird Sanctuary (bird sanctuary), which has an easement over Bayberry Lane.

The Bitting, Battaglia, Gray, Robinson, and Norman Bird Sanctuary parcels comprise a portion of what was once the Sachuest Golf Club. This property was subdivided in phases and sold as individual lots by the owners of the Sachuest Golf Club land, trustees under an indenture of trust between Edward A. Sherman, Jr., Albert K. Sherman and Harold S. Barker (collectively, trustees). In the first phase, the trustees conveyed a large parcel to the east of the subject lots to Sinclair W. Armstrong (Armstrong). At present, this land is the Norman Bird Sanctuary. The second phase of development consisted of a conveyance of three lots to the west of the bird sanctuary that are bounded by Bayberry Lane.

In October 1952, the trustees filed a plat plan for a three-lot subdivision that included the lot that was conveyed to plaintiff (the 1952 plat). The 1952 plat depicted plaintiff's parcel as lot No. 1B, belonging to Helen P. Barker, who took title on January 16, 1953. The adjacent parcel, lot No. 1, was depicted as belonging to Harold S. Barker, who also took title on January 16, 1953. Bayberry Lane, set forth by solid lines on the plat, was the southern boundary of the three-lot subdivision and was described as a "40' wide (proposed road)." The deeds to Helen P. Barker and Harold S. Barker refer to the 1952 plat and describe the southern boundary as "a proposed Road forty (40) feet in width, three hundred twenty-two and two-tenths (322.2) feet[.]" The property on the other side of the proposed road was part of the third phase of development in June 1953.[1]

In the next phase, the trustees conveyed a portion of the Sachuest Golf Club property to Charles and Elizabeth Gray and Robert and Jean Watson. The plat plan for this phase was filed in June 1953 for a subdivision of three large tracts of land on the opposite side of Bayberry Lane (the

---

1. The third lot, lot No. 1A, was conveyed in 1959 and described the southern boundary essentially using the same language.

1953 plat). The 1953 plat also depicted the previously conveyed Barker lots. Bayberry Lane was portrayed on the 1953 plat, again by solid lines, no longer described as a "proposed road" however, but rather as a "40 Foot Wide Right of Way." Significantly, for purposes of this appeal, the deed to Charles and Elizabeth Gray and Robert and Jean Watson referred to the 1953 plat plan and included a conveyance of the lane to the buyers (1953 buyers).

In the deed to the 1953 buyers, the trustees conveyed the lane in fee, by a metes and bounds description, and specifically reserved to themselves, the Barkers and the bird sanctuary, "the right to pass and repass over and across on foot and with vehicles along and over said proposed rights-of-way forty (40) feet in width as shown on said Plat on the Northerly and Easterly boundaries of the herein described premises."

### Plaintiff's Claims Against Gray and Battaglia

As a result of several conveyances over the years, Gray owns the lot across from plaintiff's lot on Bayberry Lane. The Gray lot consists of a portion of the property that was sold to the 1953 buyers. Battaglia acquired her lot in 1994; this parcel formerly was owned by Robert and Jean Watson, the 1953 buyers, and is adjacent and to the east of the Gray property.

According to plaintiff, in August 2000, shortly after plaintiff acquired his parcel from Robinson, Gray and Battaglia obstructed Bayberry Lane by placing trees, vegetation and rocks on the roadway along his property. On March 8, 2002, plaintiff filed suit in Superior Court; his amended complaint alleged that he is the owner of the portion of Bayberry Lane that abuts his property and sought quiet title in the property. The plaintiff also requested an injunction restraining Gray and Battaglia

from interfering with his right to use Bayberry Lane.

### The Gray and Battaglia Counterclaims

Gray and Battaglia counterclaimed seeking a declaratory judgment that plaintiff neither owns nor has a right to use Bayberry Lane. In the alternative, these defendants claimed ownership by adverse possession. The defendants also argued that any right plaintiff had to travel over Bayberry Lane was extinguished by the Marketable Record Title Act as set forth in G.L.1956 chapter 13.1 of title 34 (the act). Gray and Battaglia advanced claims of trespass and slander of title and sought injunctive relief and an order vacating a notice of intent to dispute a right-of-way that plaintiff filed in the land records. Several of these claims remain pending in the Superior Court.

### The Robinson Claims

The plaintiff asserted a claim against Robinson for fraud, breach of contract, breach of warranty deed, and failure to reveal a defective condition in the property in violation of G.L.1956 § 5–20.8–2. Robinson counterclaimed for abuse of process and malicious prosecution.

### Motions for Summary Judgment

In a motion for partial summary judgment plaintiff contended that he owns to the centerline of Bayberry Lane as it abuts his property and he requested an injunction restraining Gray and Battaglia from interfering with his right to travel on the roadway. Gray and Battaglia filed a joint cross-motion for summary judgment asserting that plaintiff has no ownership in Bayberry Lane and no right to pass over it. Robinson also filed a cross-motion for summary judgment seeking dismissal of all claims against him.

On March 16, 2004, the hearing justice issued a bench decision and rejected plaintiff's contention that he owned to the centerline of Bayberry Lane. The hearing justice found that a presumption of ownership to the centerline of a road can be overcome by evidence of a contrary intent by the grantor. After studying the various deeds and plats, the hearing justice concluded that in the conveyance to plaintiff, Bayberry Lane was a proposed road and was not intended to be publicly dedicated. She found that the trustees intended to convey the area comprising Bayberry Lane to the 1953 buyers. The hearing justice further held that the right-of-way reserved in the June 1953 deed was extinguished by the act because this easement does not appear in plaintiff's chain of title. The hearing justice concluded that defendants owned Bayberry Lane as tenants in common; she denied plaintiff's motion for summary judgment and granted partial summary judgment in favor of Gray and Battaglia.

At a second hearing on June 22, 2004, the hearing justice granted Robinson's motion for summary judgment and held that there was no defective condition in the property, no breach of contract or breach of warranty and no evidence of fraud on Robinson's behalf.[2] A partial judgment in favor of defendants and Robinson was entered pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure. The plaintiff appealed.

### Standard of Review

This Court reviews the grant of summary judgment *de novo*. *Sturbridge Home Builders, Inc. v. Downing Seaport, Inc.*, 890 A.2d 58, 62 (R.I.2005) (citing *United Lending Corp. v. City of Providence*, 827 A.2d 626, 631 (R.I.2003)). In doing so our task is to "determine whether the admissible evidence viewed in a light most favorable to the nonmoving party reveals a genuine issue of material fact." *Id.* (citing *Carlson v. Town of Smithfield*, 723 A.2d 1129, 1131 (R.I.1999)). "The party opposing the motion for summary judgment 'carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions.'" *Taylor v. Mass. Flora Realty, Inc.*, 840 A.2d 1126, 1129 (R.I.2004) (quoting *United Lending Corp.*, 827 A.2d at 631).

### I

### Plaintiff's Claim of Ownership to the Centerline of Bayberry Lane

Before this Court, plaintiff argues that the deed to Helen P. Barker in January 1953 included a conveyance to the centerline of the proposed road, now called Bayberry Lane. Based on this Court's holding in *Newman v. Mayor of Newport*, 73 R.I. 385, 392, 57 A.2d 173, 177 (1948), plaintiff contends that when a platted road is located between two lots, a presumption arises that each lot owner owns to the centerline of the road. Because of this presumption and his status as Helen P. Barker's successor in title, Bitting claims ownership to the centerline of Bayberry Lane. He contends that the conveyance of the proposed road in the deed to the 1953 buyers was ineffectual because a portion of the lane previously had been conveyed to Helen P. Barker in January 1953 by virtue of the presumption.

The determination of what are the boundaries of land conveyed in a deed is a question of law. *Co-operative Build-*

---

**2.** The hearing justice previously had granted Robinson's motion for summary judgment. However, she vacated her ruling when she learned that plaintiff had not been given an opportunity to respond to Robinson's motion.

*ing Bank v. Hawkins,* 30 R.I. 171, 187, 73 A. 617, 623 (1909). To glean the intention of the parties to a deed, this Court looks to the language in the deed in conjunction with the surrounding circumstances existing at the time of its execution. *Gaddes v. Pawtucket Institution for Savings,* 33 R.I. 177, 186–87, 80 A. 415, 418–19 (1911). In this case, the question of whether plaintiff owns a portion of Bayberry Lane is determined by examining the January 1953 deed from the trustees to plaintiff's predecessor in title, Helen P. Barker. According to that deed, the property was "bounded and described * * * SOUTHERLY by a proposed Road forty (40) feet in width, three hundred twenty-two and two-tenths (322.2) feet[.]" The deed also refers to the 1952 plat, a fact we deem significant with respect to plaintiff's right-of-way over the lane. In contrast to the later instrument conveying the parcel on the southerly side of the lane to the 1953 buyers, the Barker deed did not expressly convey any property interest in the proposed road.

 Nonetheless, plaintiff argues that he owns to the middle of Bayberry Lane as it extends along the boundary of his property based on this Court's decision in *Newman.* This Court held that "in the absence of special circumstances * * * the owner of land abutting on a highway owns the fee to the middle line of the highway." *Newman,* 73 R.I. at 392, 57 A.2d at 177 (citing *Healey v. Babbitt,* 14 R.I. 533 (1884)). "As a general rule, by the legal establishment of a public highway, the public acquires only an easement in such highway, the fee in the soil remaining in the owners of adjoining lands." *Id.* Although this is an accurate statement of the law, it overlooks the Court's rationale in adopting this presumption. In *Healey,* 14 R.I. at 537, we held:

"[The] presumption, however, that the grantee takes the fee of the soil to the centre of the highway, is not absolute and conclusive. It is created, or rather allowed, in the absence of proof, and *is based upon the idea that when the street or highway was laid out, the proprietors on each side contributed their land for the purpose, in equal portions. When it appears that such was not the fact, the presumption does not arise."* (Emphasis added.)

 Accordingly, if a road is created wholly over the land of one person, the presumption of ownership to the centerline of a road is defeated and a conveyance of property bounded by such road conveys title only to the roadside. *Id.* In this case, the proposed road, as shown in the 1952 plat, was a portion of the golf course parcel owned by the trustees that included the land to the north, south, and west. Thus, the presumption that the buyer owns to the middle of the highway does not arise and plaintiff's argument fails.

Furthermore, as we stated in *Healey,* 14 R.I. at 537 and *Newman,* 73 R.I. at 392, 57 A.2d at 177, special circumstances can serve to overcome a presumption of ownership to the centerline of the roadway. Such is the case now before us. In the conveyance to the 1953 buyers, the trustees conveyed the lane in fee but reserved a right-of-way over the lane for the benefit of themselves, Armstrong (the bird sanctuary), Harold S. and Helen P. Barker and their heirs and assigns. We are of the opinion that if the trustees had intended to convey the proposed road to Helen P. Barker, there would have been no need to reserve a right-of-way for her use and enjoyment in the same lane.

Accordingly, based on the plain language of the 1953 deed and the reservation of a right-of-way for the Barkers, it is apparent that the trustees did not intend to convey an ownership in the lane to Helen P. Barker. The trial justice cor-

rectly concluded that plaintiff did not own any portion of Bayberry Lane. We take a different path however, to determine whether plaintiff has an easement in Bayberry Lane.

## II

### Plaintiff's Right to Use Bayberry Lane

#### a. Incipient Dedication

The plaintiff alternatively argues that he possesses the right to travel across Bayberry Lane. As evidence of this, plaintiff points to the 1952 plat, that he argues, was an incipient dedication of Bayberry Lane granting the lot owners an easement in the roadway. As additional support for an easement over Bayberry Lane, plaintiff points to the reservation of a right-of-way in the deed to the 1953 buyers. The plaintiff argues that, by virtue of his status as an assignee of Helen P. Barker, he has a right of passage over Bayberry Lane. It is this later easement that defendants contend was defeated by the Marketable Record Title Act.

In *Newport Realty, Inc. v. Lynch,* 878 A.2d 1021 (R.I.2005), we noted that "confusion and uncertainty can arise when a collateral attack is made on the intent of the grantor in depicting streets and roads on a recorded plat." *Id.* at 1042. "Because these cases are expensive and complex, they should be decided in accordance with our settled jurisprudence * * *." *Id.* The applicable legal principles in this area are well settled. *See id.* at 1032–34.

 Disputes surrounding easements over roads depicted on recorded plats, "should rise or fall by reference to the plat on which the disputed parcel is depicted." *Id.* at 1042. "When a property owner subdivides land and 'sells lots with reference to a plat, he [or she] grants easements to the purchasers in the roadways shown on the plat, with or without

later dedication of the roadways to the public.'" *Id.* at 1032 (quoting *Kotuby v. Robbins,* 721 A.2d 881, 884 (R.I.1998)). In the absence of dedication to the public, the easement depicted on the plat "is appurtenant to the property and passes with the conveyance of the property, unless specifically excluded, even though not mentioned in the deed." *Id.* at 1033 (quoting *Robidoux v. Pelletier,* 120 R.I. 425, 436, 391 A.2d 1150, 1156 (1978)).

 As noted in the record, Bayberry Lane first was platted in 1952, and the first conveyances were made by reference to the 1952 plat. Consequently, the status of Bayberry Lane is determined by reference to the October 1952 plat—that depicted a three-lot subdivision with frontage on a proposed road delineated by solid lines. Bayberry Lane, the southern boundary of the three lots, was designated as a "40 wide (proposed road)." Based on our holding in *Newport Realty, Inc.,* 878 A.2d at 1033 and *Kotuby,* 721 A.2d at 884, Helen P. Barker obtained an easement in the "40 wide (proposed road)," that was appurtenant to the property and passed to plaintiff by virtue of the conveyance of the lot to him. Significantly, plaintiff's deed from Robinson also refers to the 1952 plat, the seminal document that created the easement.

The defendants contend that plaintiff does not have any easement rights in Bayberry Lane because it was designated as a "proposed road" of the 1952 plat. This argument fails for a number of reasons. Most roads shown on subdivision plats are proposed roads before the plat is recorded and the lots are conveyed. The roads do not come into existence until the lots are created and sold with access to the roads in the subdivision. Thus, we accord no significance to the use of the "proposed road" language. In *Chapin v. Brown,* 15

R.I. 579, 585, 10 A. 639, 641 (1887), this Court deemed irrelevant the fact that a road depicted on a recorded plat, was never laid out as a street or way. We concluded that "the existence of the streets as platted" on the recorded plan "operates by way of implied covenant, implied grant, estoppel, or dedication, whichever way of operation may be the truer, to secure to the grantee a right of way over such platted streets * * *." *Id.* at 584, 10 A. at 641.

In addition, all the plats of the former Sachuest Golf Club property depict Bayberry Lane in solid lines with access (over another proposed road) to a public thoroughfare. Bayberry Lane was the only access to a public road for lot No. 1A, the lot adjacent to Harold S. Barker's eastern boundary. These characteristics, set forth on the 1952 plat, constitute an incipient dedication by the trustees. Moreover, in *Newport Realty, Inc.*, 878 A.2d at 1037, this Court noted that the use of solid lines on a plat serves as evidence of an incipient dedication of the roads in the plat. We held that "unless the plat itself, by specific language, broken lines, or other marks, or the deeds indicate otherwise, sale of lots with reference to the plat is an incipient dedication * * *." *Id.* Consequently, we accord no significance to the designation of Bayberry Lane as a proposed road.

Finally, in *Samuel Nardone & Co. v. Bianchi*, 524 A.2d 1114, 1116 (R.I.1987), the Court held that once an incipient dedication is established by the sale of lots with reference to a recorded plat it "can be revoked only by consent of all property owners in the plat * * * or by adverse possession." There is no evidence in the record before the Court that the easement was revoked by unanimous consent of the lot owners, and the claim of adverse possession is pending in the Superior Court.

### b. Reservation of Right–of–Way

In the conveyance to the 1953 buyers, the defendants' predecessors in title, the trustees reserved a right of way over the lane. Although the forty-foot wide proposed roadway was conveyed in fee to the 1953 buyers, it was subject to the following reservation:

> "Reserving, however, to * * * Harold S. Barker and Helen P. Barker, and their heirs and *assigns,* the right to pass and repass over and across on foot and with vehicles along and over said proposed rights of way forty (40) feet in width as shown on said Plat on the Northerly [Bayberry Lane] and Easterly boundaries of the herein described premises." (Emphasis added.)

As a successor assignee of Helen P. Barker, plaintiff was a deeded beneficiary of that easement in Bayberry Lane. The defendants contend and the trial justice found that this deeded right-of-way was defeated by the act. However, because plaintiff's right-of-way over Bayberry Lane arose from the conveyance to Helen P. Barker, plaintiff's rights in Bayberry Lane did not arise from defendants' chain of title or the easement reserved in defendants' root deed.

### III

### Marketable Record Title Act

The Marketable Record Title Act, G.L.1956 chapter 13.1 of title 34, is a statutory scheme created by the Legislature that purports to extinguish an interest or claim in real estate under certain circumstances. The declared purpose of the act is to facilitate and simplify land title transactions; and as such, the Legislature had declared that the act should be construed liberally to effectuate this purpose. *See* § 34–13.1–10. The defendants argue that the easement granted to plaintiff's prede-

cessor in title in the deed of June 29, 1953, was extinguished by the operation of law.

The defendant's reliance on the Marketable Record Title Act is misplaced however, because plaintiff's right-of-way in Bayberry Lane was established by the trustees in the January 1953 conveyance to Helen P. Barker. By selling lots with reference to the recorded plat, the trustees made an incipient dedication of Bayberry Lane to the owners in the plat. *Kotuby,* 721 A.2d at 884.

Although an easement in the roadway was "reserved" to the heirs and assigns of Helen P. Barker through the defendants' root deed and, but for the applicability of the act, if any, this easement would pass to her assigns, plaintiff's right-of-way in Bayberry Lane does not depend on the reservation in the deed to the 1953 buyers. We therefore conclude that the Marketable Record Title Act does not apply to the issues before this Court.

## IV

### Plaintiff's Claims Against Robinson

The plaintiff asserted claims against Robinson for breach of contract; breach of warranty deed in violation of G.L.1956 §§ 34-11-15 and 34-11-16; failure to reveal a defective condition in the property in violation of G.L.1956 § 5-20.8-2, and common law fraud. The hearing justice granted Robinson's motion for summary judgment on these claims. She concluded that plaintiff failed to produce any evidence tending to show that Robinson acted fraudulently or that he breached the conditions of the warranty deed.

■ The trial justice held that the deed refers to Bayberry Lane as the southern boundary of the parcel but does not purport to warrant any interest in the roadway. The trial justice concluded that plaintiff's claim of ownership to the center-

line of the lane rested on a presumption, based on our holding in *Newman,* 73 R.I. at 392, 57 A.2d at 177, that absent special circumstances, "the owner of land abutting on a highway owns the fee to the middle line of the highway." *Id.* (citing *Healey v. Babbitt,* 14 R.I. 533 (1884)). This presumption however, does not apply to the facts in this case because the trustees owned the entire tract and conveyed the lane in fee to the 1953 buyers. We agree with the trial justice that plaintiff cannot succeed on his claim of fraud against Robinson.

■ "To establish a prima facie damages claim in a fraud case, 'the plaintiff must prove that the defendant "made a false representation intending thereby to induce plaintiff to rely thereon" and that the plaintiff justifiably relied thereon' to his or her damage." *Bogosian v. Bederman,* 823 A.2d 1117, 1120 (R.I.2003) (quoting *Stebbins v. Wells,* 766 A.2d 369, 372 (R.I.2001)). There is no evidence in this record demonstrating that Robinson made any false representations to plaintiff. The evidence shows that plaintiff was informed by Robinson's real estate agent that Bayberry Lane was a private road. There is no evidence in this record demonstrating that Robinson asserted an ownership interest in Bayberry Lane nor did Robinson purport to convey such rights to plaintiff. We decline to require Robinson to defend against an allegation of fraud based on a rebuttable presumption, in the absence of affirmative, intentional misrepresentations that plaintiff relied upon to his detriment.

Bitting's breach of contract and breach of warranty claims rest on his contention that Robinson failed to convey good and clear title to the property. The plaintiff alleged that the property was not free from all encumbrances because of the defendants' claim to own Bayberry Lane and their alternative claim of adverse posses-

sion. Bitting also alleged that Robinson breached the implied covenant of quiet enjoyment and the covenant to defend against any claim of title asserted by others.

■ "The covenant of general warranty and the covenant of quiet enjoyment are considered to be substantially similar in their effect except when someone varies the language of either covenant." *Lewicki v. Marszalkowski,* 455 A.2d 307, 309 (R.I. 1983). By its enactment of §§ 34–11–15 and 34–11–16, the General Assembly "delineated the obligations undertaken by a grantor who conveys real estate by either a 'warranty deed' or a conveyance 'with warrant[y] covenants.' " *Lewicki,* 455 A.2d at 309. A seller who conveys real property with warranty covenants, warrants to the grantee *inter alia,* that he or she "is lawfully seised in fee simple of the granted premises;" that the devised property is "free of all encumbrances;" that the grantee "shall at all times after the delivery of the deed peaceably and quietly have and enjoy the deeded premises;" and that the seller shall defend against any claim against the premises. *Id.* at 310. "[T]he covenants of quiet enjoyment and warranty of title are prospective in nature and come into play after the delivery of the deed." *Id.*

■ Although Bitting failed to establish ownership to the centerline of Bayberry Lane, an examination of the deed from Robinson leads us to conclude that Robinson may be liable for breach of contract and breach of warranty covenants that the property is free from encumbrances, the covenant of quiet enjoyment and the duty to defend. Because Robinson conveyed the lot with reference to the 1952 plat, he impliedly conveyed the parcel with an easement over the road, and there may have been a duty to disclose any known impediments to that right-of-way. In the deed from Robinson to Bitting, the parcel is described as bounded by Bayberry Lane as follows:

"Southerly: On Bayberry Lane, so-called a road or a way forty feet in width, three hundred twenty-two and two-tenths (322.2) feet;

" * * *

"BEING Lot No. 1–B as shown on that certain plat entitled, 'Plat Showing a Portion of Sachuest Golf Club Land, Lots No. 1 and No. 1B to be conveyed to Harold S. and Helen P. Barker, Scale 1″ = 40′ October 1952, Middletown, R.I.' drawn by Louis E. Murphy, R.P.E. and on file in Plat Book 3 at Page 48 of the Middletown Land Evidence Records."

■ Just as the trustees conveyed the lot to Helen P. Barker with reference to the 1952 plat, thereby deeding a right-of-way in the roads in the plat, Robinson conveyed with reference to the same plat and thereby assigned his right-of-way over the lane to Bitting. The plaintiff acceded to the same rights in the lane as Robinson. To the extent that the defendants adversely possessed Bayberry Lane, a claim not yet determined, Robinson may have breached the warranty covenants. We do not reach the same conclusion however, with respect to Robinson's alleged failure to disclose a deficient condition as set forth in § 5–20.8–2.

The plaintiff argues that pursuant to the disclosure requirements set forth in § 5–20.8–2(a), Robinson had an obligation to disclose to him in writing, "all deficient conditions of which the seller has actual knowledge." A deficient condition is defined as "any land restrictions, defect, malfunction, breakage, or unsound condition existing on, in, across or under the real estate of which the seller has knowledge." Section 5–20.8–1(5). Section 5–20.8–2(b)(2)(xxi) provides as follows:

"Easements and Encroachments— The seller of that real estate is required

to provide the buyer with a copy of any previous surveys of the real estate that are in the seller's possession and notify the buyer of any known easements, encroachments, covenants or restrictions of the seller's real estate. A buyer may wish to have a boundary or other survey independently performed at his or her own expense."

Although the statute imposes a duty on the part of sellers and their agents to disclose known defects, as that term broadly is defined, the Legislature did not create a private cause of action for buyers to seek damages for violations of its provisions. *See Stebbins v. Wells,* 818 A.2d 711, 716 (R.I.2003) (because the statute, chapter 20.8 of title 5, provides for a civil fine for each violation, the Supreme Court refuses to imply a private right of action for damages under the act). Therefore, Bitting does not have an independent claim for any alleged violations of the statute; however, evidence of a knowing violation is admissible to support other claims against the seller. *Id.*

### Conclusion

For the reasons articulated herein, the judgment appealed from is affirmed in part and reversed in part as follows:

### The Amended Complaint

The Superior Court's grant of summary judgment on count 1 of the plaintiff's amended complaint declaring that plaintiff does not own to the centerline of Bayberry Lane is affirmed.

The Superior Court's grant of summary judgment on count 2 of the plaintiff's amended complaint, alleging breach of contract by the defendant Robinson, is vacated and the case is remanded to the Superior Court for trial.

The Superior Court's grant of summary judgment on count 3 of the plaintiff's amended complaint, alleging interference with plaintiff's rights to use the entire length and width of Bayberry Lane, is vacated.

The Superior Court's grant of summary judgment on count 4 of the plaintiff's amended complaint, alleging breach of warranty deed by the defendant Robinson, is vacated and the case is remanded to the Superior Court for trial.

The Superior Court's grant of summary judgment on count 5 of the plaintiff's amended complaint, alleging violation of G.L.1956 chapter 20.8 of title 5 by the defendant Robinson, is affirmed.

The Superior Court's grant of summary judgment on count 6 of the plaintiff's amended complaint, alleging fraud by the defendant Robinson, is affirmed.

### The Counterclaims of the Defendants Gray and Battaglia

The Superior Court's grant of summary judgment on count 1 of the counterclaim is affirmed in part and vacated in part. We affirm that part of the judgment that declares that plaintiff does not own to the centerline of Bayberry Lane. We vacate the portion of the judgment that declares that plaintiff does not have a right-of-way over Bayberry Lane.

The Superior Court's grant of summary judgment on count 3 of the counterclaim is vacated to the extent that the judgment declares that plaintiff's right-of-way over Bayberry Lane was extinguished by the Marketable Record Title Act, G.L.1956 chapter 13.1 of title 34, the Court having concluded that the plaintiff's right-of-way is not affected by the act.

The papers shall be returned to the Superior Court for further proceedings in accordance with this opinion.

Justice ROBINSON did not participate.