DECISION
In this zoning appeal, Peter and Marion Kieltyka challenge the Decision of the Town of New Shoreham Zoning Board reversing the Decision of the Town Building Official in issuing a Zoning Certificate certifying that Appellants' property consisted of two separate lots. Appellants specifically allege that the Board's Decision ignored the great weight of the evidence and was affected by error of law. Jurisdiction is pursuant to G.L. 1956 § 45-24-69. For the reasons set forth in this Decision, this Court reverses the Decision of the Board.
 I FACTS AND TRAVEL
Mr. and Mrs. Kieltyka own land in the Town of New Shoreham, more particularly described as Lot 72 on Tax Assessor's Map 9[1]
(the "property"). Well before their *Page 2 
purchase, the property has been described as:
 that certain parcel of two (2) adjacent plots of land . . . designated as Plot #6 . . . and . . . Plot #13 . . . on a MAP with PLAN for development of certain real properties . . . labeled "KATAHDUMA" that is on file (OCT. 1st 1955 @ 1:30 p.m.) with the Town Clerk as part of the Land Records of the Town of New Shoreham[.]
(Appellants' Ex. D[2], copy of the 1965 deed.[3]) The Katahduma plan, referenced in the above description, was recorded in 1955 for Katharyn and Durant Maynard, who owned the property and surrounding area at that time. (Building Official's Ex. 4, copy of Katahduma plan.) The plan sketched out a series of boundary lines and roadways, some with corresponding measurements and some without.Id. Together, these boundary lines delineate twenty-one (21) individually enumerated lots. Id.
After the 1955 plan was recorded, the property was transferred by deed to Irene C. Sala and Frances E. Cormier in 1965. (Appellants' Ex. D.) These two instruments — the 1955 plan and 1965 deed — pre-date zoning, and are therefore of particular significance in this case. Following the death of Irene Sala, Frances Cormier transferred the property into a trust. (Appellants' Ex. E, copy of the 1990 deed.) In 2007, pursuant to an Order for Partition, Paula M. Cuculo executed a Commissioner's Deed transferring the property to Mr. and Mrs. Kieltyka. One month after Mr. and Mrs. Kieltyka purchased the property, Mr. and Mrs. Murphy recorded a survey map of the Kieltykas' property in the *Page 3 
Town's land evidence records. (Tr. at 68-69.) Mr. and Mrs. Murphy owned a parcel adjacent to the Kieltyka land. This survey map, which did not receive planning board approval, showed the Kieltyka property as a single lot. Id. at 71. The Kieltykas, thereafter, had a separate survey of their property conducted by the same surveyor. Id. at 70. This survey contained the same exterior survey lines, but included an interior line which separated Lot 6 from Lot 13. Id.
In July 2007, a real estate broker requested a zoning certificate from the Town Building Official. (Building Official's Ex. 1, copy of letter requesting zoning certificate.) The Building Official reviewed the relevant land evidence records, [4] and in March of 2008, issued the Zoning Certificate for the property. He found that the description of the property in the 1965 deed "clearly defines the identities of two lots `6' `13,'" that this description remained consistent through the 1990 deed and commissioner's deed, and that no deed or recorded plan existed that would accomplish a merger of the properties. (Building Official's Ex. 2, copy of Zoning Certificate.) The official concluded the Kieltyka property contained two non-conforming lots of record, which would thereafter be designated as Lots 72-1 and 72-2 on Tax Assessor's Plat 9. Id.
Mr. and Mrs. Murphy appealed the Building Official's Zoning Certificate to the Zoning Board of Review for the Town of New Shoreham. On April 28, 2008, the Board conducted a properly advertised hearing at which it considered evidence and heard testimony. *Page 4 
 A. THE HEARING
The New Shoreham Zoning Board received testimony from Marc Tillson, the Town's Building Official, Elliot Taubman, an experienced real estate attorney on Block Island, Peter Kieltyka, the owner-appellant, and several other members of the community.
At the hearing, Mr. Tillson reaffirmed the findings and conclusions of the Zoning Certificate. He testified that the Town's Zoning Ordinance § 202 defines a lot as:
 a parcel whose boundaries have been established by some legal instrument such as a recorded deed, or a recorded map, which is recognized as a separate legal entity for the purposes of transfer of title.
(Town of New Shoreham Zoning Ordinance § 202(A)(109)(b); Tr. at 8.) Based on this definition, he concluded that "[t]he recorded Katahduma plan and the subsequent recorded deeds identify both Lots 6 and 13 as separate and distinct lots of record." (Tr. at 9.) Upon cross-examination, Mr. Tillson acknowledged that the metes and bounds description of the deeds describes the overall boundaries of the parcel, and does not separately describe the boundaries of Lots 6 and 13. Id. at 25-26, 28-29. However, he did not believe that describing the overall boundaries of the property was intended to eliminate the separate existences of the two lots.Id. at 44-45. It remained his conclusion that based on the 1965 deed's description of the parcel as two adjacent plots of land, the property consisted of two historic plots of record that predated zoning. Id.
Attorney Taubman testified that he had been an attorney specializing in real estate on Block Island since 1980.Id. at 48. He testified that, based on his years of experience with Block Island usages and customs, the term "plot" was used interchangeably with *Page 5 
"lot," and the terms "tract or parcel" were used to describe a piece of property that "contains lots or plots." Id. at 51. It was his belief that if a property "historically had more than one lot, then it [the description] would say, containing lot."Id. at 52. Mr. Taubman and the Kieltykas' attorney had the following exchange:
 Mr. Landry: So, if we're dealing with a large tract that had separate building lots, would the normal conveyance and usage have been to describe the entire parcel as a tract or a parcel?
 Mr. Taubman: Yes.
 Mr. Landry: And the individual lots of record as plots?
 Mr. Taubman: Or lots.
Id. Upon cross-examination, Mr. Taubman stated that it is "fairly common" for property descriptions to "define the outside bounds of a piece of land which may contain two, or three, or more lots." Id. at 53. While he admitted that metes and bounds descriptions are often more accurate descriptions of the boundaries of the property than references to hand-drawn maps are, he noted that this fact "doesn't change the character [of a parcel of property] as being two lots." Id. at 55.
Following this testimony, the Board heard from several members of the community, as well as Mr. Kieltyka. After closing arguments by the attorneys for the parties, the Board closed the hearing and took the matter under advisement.
 B. THE BOARD'S DECISION
On August 13, 2008, the Board issued a written decision reversing the Decision of the Building Official. (Town of New Shoreham Zoning Board of Review Decision (hereinafter "Decision.")) The Board found that the 1955 plan did "not have sufficient dimension on the plan to establish the[] boundaries" of Lots 6 and 13.Id. at ¶ 4(a), p. 2. *Page 6 
The Board therefore concluded that the "Katahduma Residential Colony Plan . . . was a conceptual plan or sketch, to be used to guide the future subdivision of the land, but was not in itself a subdivision of the land." Id. at ¶ 5, pp. 2-3. The Board found the 1965 deed to be the operative legal instrument for consideration, id. at ¶ 6, p. 3. Based on the description contained in that deed, the Board concluded that the deed:
 describes one, and only one parcel or lot of land by specific boundaries. ¶ 7.
 The references to plots 6 and 13 on Katahduma Plan were in the deed for reference. They were not part of the legal description that established the boundaries of the parcel being conveyed, nor could they have been, as they had no defined boundaries. ¶ 8.
 . . . .
 A lot is a separate legal entity for the purpose of conveying title. A legal entity needs a description sufficient to locate its boundaries. The plots referenced in the 1965 deed do not meet this test. The 1965 deed changes the only two dimensions shown on the Katahduma Plan. Without the metes and bounds description in the 1965 deed, Plot 6 and Plot 13 could not have been conveyed. Simply put, a deed of only the recorded plots, 6 and 13, would have been useless as the plots could not be located on the ground. ¶ 11.
Id. at ¶¶ 7-8, 11. Because this Court finds these conclusions to be affected by error of law, it reverses the Zoning Board's Decision on that ground.
 II STANDARD OF REVIEW
Zoning Board decisions are reviewed by the Superior Court pursuant to G.L. 1956 § 45-24-69(d). That section provides:
 The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if *Page 7 
substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
In reviewing questions of law, this Court conducts de novo
review. Tanner v. Town Council,880 A.2d 784, 791 (R.I. 2005). In reviewing questions of fact, it is the job of the trial justice to "examine the entire record to determine whether `substantial' evidence exists to support the board's findings." DeStefano v. Zoning Board of Review ofWarwick,122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979) (superseded by statute, G.L. 1956 § 45-24-41 — only as it "relate[s] to the burden of proof required to authorize the granting of a dimensional variance" — in Sciacca v. Caruso,769 A.2d 578, 583 (R.I. 2001). "Substantial evidence is relevant evidence that a reasonable person would accept as adequate to support the board's conclusion and amounts to `more than a scintilla but less than a preponderance.'" Lischio v. Zoning Bd. Of Reviewof the Town of North Kingstown, 818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswell v. George Sherman Sand and Gravel Co.,Inc., 424 A.2d 646, 647 (R.I. 1981)). *Page 8 
 III LAW AND ANALYSIS A. Error of Law
Here, two land evidence records predate the Town's implementation of zoning in 1967: the 1955 plan and the 1965 deed. The Board's decision was based on a finding that the 1965 deed described a single lot, and even if the 1955 plan created two separate lots (as the Zoning Board found) the lots were merged by the 1965 deed. (Decision at 6-8, 11.) Therefore, the relevant inquiry on appeal is whether the pre-zoning 1965 deed conveys a single lot of land or two individual lots.
"The determination of what are the boundaries of land conveyed in a deed is a question of law." Bitting v. Gray,897 A.2d 25, 30 (R.I. 2006), citation omitted; seealso Tanner, 880 A.2d at 791. Whenever possible, the terms of a deed are to be construed from the language of the deed,Bitting, 897 A.2d at 31 and according to their plain meaning.Sakonnet Point Marina Association, Inc. v. Bluff Head Corp.,798 A.2d 439, 442 (R.I. 2002) (citing Kusiak v. Ucci,53 R.I. 36, 38, 163 A. 226, 226 (1932)). "The object sought in construing [the terms of a] deed is to ascertain and give effect, insofar as the rules of law will permit, to the intention of the parties." Thomas v. Ross,119 R.I. 231, 240, 376 A.2d 1368, 1373 (1977). However, the intention to be ascertained is the "intention expressed in the instrument and not some undisclosed intention that the parties may have had in mind." Id. at 240, 376 A.2d at 1373.
The plain language throughout the 1965 deed clearly indicates intent on the part of the parties to convey land consisting of two individually identified lots. From the *Page 9 
outset, the deed treats each lot independently. It grants a parcel of two plots, which it separately identifies as being designated numbers 6 and 13. Furthermore, in altering the dimensions of the property, each lot was altered independently. The relevant language is as follows:
 An undivided one-half interest in that certain parcel of two (2) adjacent plots of land situated in the southerly part of Block Island, Rhode Island that are designated as Plot #6, extended to a north-south average length of about three hundred and ninety feet (390') and as Plot # 13 with its western part expanded to a north-south length of about two hundred and eighty feet (280') on a MAP with PLAN for the development of certain real property of Katharyn P. Maynard and Durant Maynard labeled "KATAHDUMA" that is on file (OCT. 1ST 1955 @ 1:30 p.m.) with the Town Clerk as part of the Land Records of the Town of New Shoreham, Rhode Island the provision of which plan govern this conveyance as specifically amended and clarified hereinafter and which parcel is, statistically BOUNDED as FOLLOWS. . . ."
(Appellants' Ex. D, copy of 1965 deed) (bolded emphasis added.) The lots were separately identified. The grantor explicitly intended to convey two separate lots, hence they were separately altered. The alterations were not made to the property as a whole, but to the separate lots. The independence of each of the two lots was consistently maintained. Indeed, the plots are separately addressed throughout the deed. It is only in that portion of the deed that describes the "statistical boundaries" of the "parcel," that include both lots under a common heading. The expert testimony before the Board established that the usages, customs, and practices of Block Island was to use the term "tract or parcel" to refer to a property that contained more than one lot or plot. (Tr. at *Page 10 
51.)[5] The language evidences a desire to keep the two plots separate. This clear directive should not be ignored or read out of the deed; it should be given effect to reflect the clear intention of the parties. Thomas, 119 R.I. at 240, 376 A.2d at 1373.
In addition, the deed specifically refers to the Katahduma plan on file in the Land Evidence records, noting "the provisions of which plan govern this conveyance as specifically amended and clarified hereinafter. . . ." That plan, which the deed unambiguously states is to govern this conveyance, recognizes the existence of two separate plots. The plan indicates that each lot was to support a single family home. See Building Official's Ex. 4, Katahduma Plan, section entitled "Residential Colony Plan" ¶ 2 ("Use of each plot, excepting number 21, shall be limited to one one-family dwelling together with such garage, shed . . . as are normal to the residential needs. . . .") This provision is particularly significant in light of the following language from the 1965 deed:
 PROVIDED HOWEVER that (Plan Provisions 2 — Clarifications and amendment) that northward extension of each of the two plots of this grant, as here-in-before recited, shall not be construed as creating an additional plot nor a change in the topographically indicated dwelling site of either plot and the planning of plots shall be such that the dwellings thereon be erected not less than two hundred and fifty feet (250') distance from the dwelling on Plot #7.
(Appellants' Ex. D) (emphasis added.)
References to the "dwelling site of either plot" or the "dwellings" "thereon" add further support to the contention that the grantors contemplated parcels which support *Page 11 
more than one dwelling. In light of this language, the Board's finding (that the 1965 deed created one new and different lot) is clearly erroneous as inconsistent with the plain language of the instrument itself. See Decision at 4(f).[6]
For all of these reasons, this Court finds that the intention of the parties to the 1965 deed was to convey a parcel consisting of two separate developable lots. This intention is clear in the express language of the deed.
This Court may only give effect to that intention "insofar as the rules of law will permit." Thomas,119 R.I. at 240, 376 A.2d at 1373. Therefore, in order to determine whether the deed conveyed separate lots, this Court must apply the legal criteria for what constitutes a "lot," as that term is defined in the state and local statutes. New Shoreham's ordinance tracks the language of G.L. 1956 § 45-24-31(38)(ii), which defines a lot as:
 A parcel of land whose boundaries have been established by some legal instrument such as a recorded deed or recorded map and which is recognized as a separate legal entity for purposes of transfer of title.
Compare § 45-24-31(38)(ii), with Town of New Shoreham Zoning Ordinance § 202(A)(109)(b). It is well established in this jurisdiction that when a deed refers to a plat or subdivision plan, that plan is incorporated as part of the deed. Catalano v.Woodward, 617 A.2d 1363, 1367 (R.I. 1992); seealso 23 Am. Jur. 2d Deeds § 50.
Here, the New Shoreham Zoning Board found that the 1955 plan did not sufficiently describe the boundaries of plots 6 and 13, and therefore lots were not created then. (Decision at 6.) The Board ruled that the 1965 deed established sufficient *Page 12 
boundaries for the parcel. The remaining question before this Court is, therefore, whether the 1955 plan in conjunction with the 1965 deed, taken together, yields a sufficient description to create two separate lots. This Court finds that they do.
The exterior boundaries of the parcel are expanded and recited in detail in the 1965 deed. The expansion of those boundaries, as they specifically pertain to each lot, is appropriately accounted for in that portion of the deed which addresses the alterations to the north-south boundaries of each lot. This description, when considered in relation to the dimensions and depictions of the property in the 1955 plan, is sufficient to set out the precise boundaries of the two lots, rendering them independent from one another. The evidence revealed that each lot could be separately surveyed based on the pre-zoning land records, and each lot was in fact surveyed as a separate lot based on those records. (See Greene survey at Exhibit 5). At the hearing, Mr. Kieltyka testified that the same surveyor, who previously surveyed the exterior boundary of his property for the neighbors, later surveyed the interior of the Kieltyka property. According to Mr. Kieltyka "it was actually quite simple for him to draw the line exactly where it should be between the two plots." (Tr. at 70.) Based on the Board's erroneous construction of the 1965 deed, the Zoning Board Decision is deficient as it never properly reached this question.
 B. Inappropriate Application of Merger Ordinance
The Town contends that the two properties merged by operation of law. The Town's brief asserts that the required merger of jointly owned lots "is a common provision in zoning ordinances" (Town brief, p. 8). While merger ordinances may be *Page 13 
common, there is no such ordinance enacted for New Shoreham. To require that property lines be altered, because of ordinances enacted in other towns and not New Shoreham, is legal folly.
The ordinance which the Town references is not a pure merger ordinance. It is very limited, by its own terms. It reads:
 No lot area shall be so reduced that yards, total area, and lot frontage shall be less than prescribed for the district in which the lot is located. No yard or open space provided around any building for the purpose of complying with the provisions of this ordinance shall again be used as a yard or open space for any other building.
 Where no adjacent land is in the same ownership so as to form a larger land parcel, a lot smaller than the minimum dimensions and area required by this ordinance, which was a lot of record on the effective date of this ordinance, may be used for a single family dwelling provided such lot has a minimum area of 20,000 square feet in Residential A zone, 10,000 square feet in Residential B zone, and 10,000 square feet in Residential C zone. All yard dimensions of such a lot shall conform to the provisions of the zones in which they are located. 1967 Ordinance Art. VI, § 1.
Clearly, the first paragraph does not force a merger of lots — it discourages the creation of new, undersized lots. It also prevents the use of open space on one parcel to justify building on several parcels.[7] The second paragraph applies only when adjacent properties are not owed by the same persons.
In 2009, this Court considered whether the same ordinance prevented a property owner from dividing a lot when the subdivision had not been approved by the town. Finding that stone walls set an historical division of separate lots, the Court held "In light of the ambiguity of the merger provision at issue here, this Court must strictly construe Ordinance Art. VI, § 1 in favor of the landowners and hold that no merger occurred." *Page 14 Lorna Wright, Executrix v. Town of New Shoreham Zoning Board ofReview, W.C. No. 2009-11 (Thompson, J., Filed August 6, 2009), p. 19. The Wright Court reasoned that finding the Ordinance required a merger would "stretch the Ordinance" and construe the law too "holistically." Id. at 17.[8]
Accordingly, while the Ordinance may affect the development of the lots in question, they do not force the merger of the lots now.
 III CONCLUSION
For the reasons set forth above, this Court finds that the Board's Decision, reversing the Zoning Certificate of Building Official, was affected by error of law. In misconstruing the plain language of the 1965 deed, the Board erroneously concluded that Lots 6 and 13 merged by operation of that pre-zoning instrument. The 1965 deed clearly preserved the existence of two separate lots which predate zoning. As a result of this error of law, substantial rights of the Appellants have been prejudiced. Therefore, the Decision of the Board is hereby reversed.
[1] It is undisputed that the parcel has been designated as a single lot for tax purposes since the Town began mapping assessed lots in the late 1970s. (Tr. New Shoreham Zoning Board of Review Hearing, April 28, 2008 at 50; Appellants' Ex. C, photocopy of Tax Assessor's Map.) However, it is well recognized that tax assessors' records are created for the convenience of the tax collector and not for the purposes of determining zoning. Sanfilippo v. Board ofReview of Town of Middletown,96 R.I. 17, 188 A.2d 464 (R.I. 1963).
[2] Zoning Board exhibits are referenced according to the positions of the parties in that action. Therefore, exhibits cited as "Appellants' exhibits" refer to the exhibits submitted by the Murphys, who were the Appellants in that action and are the Appellees here.
[3] The 1965 deed is a handwritten document that is extremely difficult to read. At the hearing, the experts and the Board referred to the description in a 1990 Quitclaim Deed, which contained a "word-for-word" recitation of the 1965 description. (Tr. New Shoreham Zoning Board of Review Hr'g, April 28, 2008 at 16-17.) For reasons of convenience and accuracy, this Court also consults the 1990 deed when referring to the description in the 1965 deed.
[4] The land evidence records reviewed by the Building Official included the 1955 Katahduma plan, the 1965 deed, the 1990 deed, and the Commissioner's Deed. (Tr. at 6-7).
[5] It was suggested that the word "parcel" could also refer to a single lot, if a property historically consisted of only one lot. However, as the deed specifically refers to two plots and cites an historical plan recorded in the land evidence records that identifies the property as consisting of two plots, this Court finds that the term Parcel, as used within this deed, was intended to refer to a property consisting of more than one lot or plot.
[6] The zoning board reasoned that the 1955 sketch "was a conceptual plan, or sketch to be used to guide the future subdivision of the land. . ." ¶ 5, p. 2. This rationale was never explained. As significant effort was expended to prepare the 1955 sketch and minimal regulation over subdivisions existed at the time, this explanation the Court respectfully disagrees.
[7] This restriction needed to be expressed explicitly in the ordinance, if lots are not required to merge to obtain the first building permit.
[8] The Wright decision also noted "The third [sentence of the Ordinance] allows pre-existing, non-conforming lots of record to be used for single family dwellings." Id. at 16.
 *Page 1