DECISION
Pursuant to Rule 56 of the Superior Court Rules of Civil Procedure, this matter comes before the Court on a motion for partial summary judgment filed by Plaintiff Washington Village Country Club and Residency Condominium Association ("Plaintiff"). Plaintiff seeks a grant of summary judgment as to Counts II, III, VIII, and IX of its amended complaint against Defendant Island Green Golf, LLC ("Defendant") and on Counts IV, V, and VI of Defendant's counterclaim. Defendant timely filed an objection to Plaintiff's motion, and filed a cross-motion for summary judgment on all counts contained in its counterclaim and in Plaintiff's complaint.
 I Facts and Travel
Plaintiff is an association of the unit owners of the Washington Village Country Club and Residency Condominium located in Coventry, Rhode Island, on real property designated as Plat 61, Lot 13.1 (the "Condominium Property"). The Condominium Property is comprised of 35.73 acres of land. The Defendant owns and operates a nine-hole golf course known as the Washington Village Golf Course on 37.94 acres of land, identified as Plat 53, Lot 32.01 (the *Page 2 
"Golf Course Property"). The Condominium Property and the Golf Course Property are abutting and were originally part of a single parcel of land (the "Original Parcel").
Initially, the Original Parcel was owned by the Hopkins family, who at some point during the 1960's constructed a golf course upon it. In the early 1980's, an entity known as Forcier, Inc. ("Forcier") acquired the land with the intent to develop it as a mixed residential community/golf course. On May 1, 1989, Forcier divided the Original Parcel approximately in half, resulting in the creation of the Golf Course Property and the Condominium Property. On that same date, Forcier prepared and executed a deed, which conveyed the Golf Course Property to an entity called W.P. Associates. The land transferred by way of the deed contained virtually the entire existing golf course. However, the property line evidenced by the deed did not accurately reflect the boundary of the land that was actually being maintained and used as a golf course.[1] This deed was held in escrow and not delivered or recorded until November 19, 1997.
Additionally, on or about May 1, 1989, Forcier transferred title in the Condominium Property to W.P. Associates. Thereafter, on June 29, 1989, W.P. Associates recorded a Declaration of Condominium in the Land Evidence Records of the Town of Coventry (the "Declaration"). The Declaration created the Washington Village Country Club and Residency. On May 19, 1993, Envine Real Estate, Inc. ("Envine") took title to the Condominium Property along with all development and special declarant rights as defined in the Declaration, by virtue of a mortgagee's deed.[2] Subsequently, on November 14, 1997, Envine transferred two parcels of land located within the Condominium Property, via quitclaim deed, to Par Four Inc. ("Par Four"). The two parcels were located along the border of the Condominium Property and contained approximately 29,000 square feet (the "Withdrawn Parcels"). Concurrent with the *Page 3 
transfer, Envine recorded an instrument entitled "Withdrawal of Land from the Declaration of Washington Village Country Club and Residency" in the Coventry Land Evidence Records.
Thereafter, on November 19, 1997, W.P. Associates transferred the Golf Course Property, via quitclaim deed, to Par Four. Additionally on November 19, 1997, a number of purported easements were granted to Par Four. The Town of Coventry granted Par Four an easement over property it owned adjacent to the Golf Course Property to facilitate ingress and egress by both foot and motor vehicle. Envine granted to Par Four an access and storage easement known as the "Fairway Drive Easement," which gave Par Four the right to travel across the Condominium Property. The Fairway Drive Easement also afforded Par Four the right to maintain the storage and maintenance barn upon the easement area. Envine then granted a second easement to Par Four, known as the "Mashie Circle Easement," which allowed golf course patrons a route of travel, by foot or vehicle, from a number of the golf course's greens to the tee box of the next hole of play. Thereafter, on May 23, 2005, Par Four transferred title in the Golf Course Property, the Withdrawn Parcels and the above-mentioned easements to the Defendant, by way of a quitclaim deed.
The basis for the instant action is, in part, a disagreement between the parties regarding use of the Withdrawn Parcels and the above easements. In addition, a further dispute arose based on Plaintiff's claim that five of the golf course's nine holes are currently encroaching upon approximately 40,000 square feet of the Condominium Property (the "Area of Encroachment"). Plaintiff argues that this issue arose as a result of the above-mentioned inconsistency in the original deed to the Golf Course Property. Plaintiff claims that it attempted to resolve this issue with Par Four but such attempts were unsuccessful. As a result, on April 14, 1999, Plaintiff filed a copy of a survey, purportedly evidencing the encroachment, in the Coventry Land Evidence *Page 4 
Records (the "Survey").[3] The Survey was filed along with a document entitled "Notice of Intent to Dispute Interrupting Adverse Possession" (the "Notice of Intent"). In addition to alleging that Defendant is encroaching on its property, Plaintiff also argues that those easements granted by Envine to Par Four, and subsequently transferred to Defendant, are invalid. Additionally, Plaintiff asserts that Envine's withdrawal and concomitant transfer of the Withdrawn Parcels was without authority and therefore void. Plaintiff states that it has continuously objected to Defendant's use of its land without compensation or indemnification.
On June 22, 2005, Plaintiff filed the within action seeking injunctive, declaratory, and equitable relief, along with compensatory damages. On July 12, 2005, Defendant filed an answer and counterclaim. On August 19, 2005, Plaintiff filed an answer to the counterclaim and also brought a third-party complaint against the Town of Coventry concerning a drainage issue raised in Defendant's counterclaim.
Plaintiff has since filed a motion for partial summary judgment seeking a declaration that: (1) under Count II of its complaint, it owns the Area of Encroachment; (2) under Count IX, the Withdrawn Parcels are the property of Plaintiff and Defendant has no right to use or possess them; and (3) under Counts III and VIII respectively, the Fairway Drive Easement and Mashie Circle Easement are invalid as a matter of law, and as a result Defendant is prohibited from using such property any further. Defendant has filed a cross-motion seeking summary judgment on all counts contained in Plaintiff's complaint and its own counterclaim. In its counterclaim, Defendants asserts the following counts of: (1) nuisance; (2) trespass; (3) tortious interference with contractual relations and prospective contractual relations; (4) a declaratory judgment as to its right to use the easements; (5) a declaratory judgment as to a prescriptive easement; and (6) a *Page 5 
declaratory judgment as to easements by necessity.[4] For the reasons set forth herewith, this Court grants Plaintiff's motion in part and denies it in part. Defendant's motion is denied.
 II Standard of Review
"Summary judgment is a proceeding in which the proponent must demonstrate by affidavits, depositions, pleadings, and other documentary matter . . . that he or she is entitled to judgment as a matter of law and that there are no genuine issues of material fact." Palmisciano v.Burrillville Racing Assoc., 603 A.2d 317, 320 (R.I. 1992) (citingSteinberg v. State, 427 A.2d 338 (R.I. 1981); Ludwig v. Kowal,419 A.2d 297 (R.I. 1980); Super. R. Civ. P. 56(c)). "Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, no material questions of fact exist and the moving party is entitled to judgment as a matter of law." Konar v. PFL LifeIns. Co., 840 A.2d 1115, 1117 (R.I. 2004).
The party opposing the motion for summary judgment carries "the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." Tanner v. TownCouncil of East Greenwich, 880 A.2d 784, 791 (R.I. 2005) (quotingLucier v. Impact Recreation, Ltd., 864 A.2d 635, 638 (R.I. 2005)). Only "[w]hen an examination of the pleadings, affidavits, admissions, answers to interrogatories and other similar matters, viewed in light most favorable to the party opposing the motion, reveals no such [disputed material issue of fact,] the suit is ripe for summary judgment."Industrial National Bank v. Peloso, 121 R.I. 305, 306, 397 A.2d 1312,1313 (1979). *Page 6 
 III The Area of Encroachment
Count II of Plaintiff's amended complaint seeks a declaration that Plaintiff owns the Area of Encroachment. As stated above, Plaintiff maintains that at the time Defendant took title to the Golf Course Property, five of the course's nine holes encroached upon approximately 40,000 square feet of the Condominium Property. Plaintiff further argues that this encroachment is evidenced by the Survey, which was filed as an attachment to the Notice of Intent on April 14, 1999. Plaintiff alleges that Defendant knew of the encroachment before it purchased the Golf Course Property. In support of its contentions, Plaintiff notes that by order of this Court, Defendant had until July 25, 2005 to obtain its own survey of the alleged encroachment. On August 25, 2005, by agreement of the parties, the Court issued an order stating inter alia that the parties assented to the boundary line set forth in the Survey as the boundary reflected in the deed severing the land. As such, Plaintiff argues that Defendant has neither contested the legal boundary as set forth in the chain of title, nor has it proffered a survey which disputes Plaintiff's survey. Plaintiff therefore contends that a boundary dispute does not exist and thus, Plaintiff is entitled to summary judgment as to this issue.
Defendant's argument with regard to ownership of the Area of Encroachment is grounded in equity. Expressly, Defendant contends that a wood rail fence, which is located in the Area of Encroachment, is the actual boundary line between the Golf Course Property and the Condominium Property. In support of this argument, Defendant asserts that the parties have acquiesced to the wood rail fence as the boundary because its patrons and the patrons of its predecessors have been using the Area of Encroachment since the golf course was first constructed in the 1960's. Defendant further argues that it has always maintained and *Page 7 
landscaped the area up to the fence and that Plaintiff has maintained the area on the opposite side of the fence. Thus, Defendant concludes that although Plaintiff recorded the Notice of Intent, Plaintiff was at that time estopped from denying that the wood rail fence was the actual boundary line based upon a theory of acquiescence.
The common law doctrine of acquiescence provides that "owners from adjoining estates are precluded from denying a boundary line recognized by both owners for a length of time equal to that prescribed by the statute of limitations barring a right of reentry." DeCosta v.DeCosta, 819 A.2d 1261, 1264 (R.I. 2003). This long recognized doctrine serves the purpose of "quieting titles, and preventing the uncertainty and confusion, and consequent litigation, which would be likely to result from the disturbance of boundary lines so long established."O'Donnell v. Penney, 17 R.I. 164, 167, 20 A. 305, 307 (1890). A party alleging acquiescence need only show that some boundary marker existed and that the parties recognized that boundary for a period equal to that prescribed by the statute of limitations to bar reentry, namely, for a period equal to ten years. DeCosta, 819 A.2d at 1264. Acquiescence for the requisite number of years is "conclusive evidence of an agreement to establish such a line and the parties will be precluded from claiming that the line so acquiesced in is not the true boundary." Locke v.O'Brien, 610 A.2d 552, 556 (R.I. 1992).
In light of the well-established case law, this Court can find no merit in Defendant's arguments with respect to this issue. The fact that patrons of the golf course have used the Area of Encroachment and that course owners have maintained it since the course was first constructed is immaterial. The relevant inquiry is whether Defendant, through its predecessors in interest, can satisfy the requisite ten-year period to gain title by acquiescence after the Original Parcel was divided. The deed that severed the Original Parcel and established the border now in *Page 8 
question was executed on May 1, 1989. As noted previously, the Notice of Intent was filed on April 14, 1999, clearly within ten years from the date of severance of the Original Parcel. As a result, Plaintiff cannot be considered to have acquiesced for the requisite time period to a different boundary than that evidenced by the deed which established the subject boundary. Accordingly, this Court finds Defendant's contention that it holds title to the Area of Encroachment as a result of acquiescence to be without merit. Rather, Plaintiff is the rightful owner of the Area of Encroachment. Thus, Plaintiff is entitled to summary judgment on Count II of its amended complaint.
 IV The Withdrawn Parcels A Validity of the Withdrawal and Conveyance
In Count IX of its amended complaint, Plaintiff seeks a declaration that the Withdrawn Parcels, which were withdrawn by Envine and conveyed to Par Four, are legally owned by Plaintiff. Plaintiff maintains that Defendant has no legal right to possess or use the Withdrawn Parcels. In support of this claim, Plaintiff notes the fact that Article 12.1 of the Declaration reserves, for the benefit of the declarant, a list of development rights and special declarant rights.[5] Plaintiff asserts that nowhere else does the Declaration specifically describe the reserved *Page 9 
rights. Plaintiff also notes that the Rhode Island Condominium Act (the "Condominium Act") provides that the declaration for a condominium must contain:
 "A description of any development rights and other special declarant rights reserved by the declarant, together with a sufficient description of the real estate to which each of these rights applies, and a time limit within which each of those rights must be exercised." G.L. 1956 § 34-36.1-2.05(a)(8).
Plaintiff further remarks that, with respect to the exercise of development rights, the Condominium Act provides that:
 "If the declarant provides, pursuant to § 34-36.1-2.05(a)(8), that all or a portion of the real estate is subject to the development right of withdrawal: (1) If all the real estate is subject to withdrawal, and the declaration does not describe separate portions of real estate subject to that right, none of the real estate may be withdrawn after a unit has been conveyed to a purchaser; and (2) If a portion or portions are subject to withdrawal, no portion may be withdrawn after a unit in that portion has been conveyed to a purchaser." Section 34-36.1-2.10(d).
In light of the above, Plaintiff argues that the Declaration, as amended, did not specifically describe the Withdrawn Parcels and did not identify them as parcels subject to withdrawal as required by the Condominium Act. Further, Plaintiff maintains that because a significant number of units had been sold at the time of the withdrawal, the purported withdrawal violated the Condominium Act, which prohibits withdrawal "after a unit has been conveyed to a purchaser." Section34-36.1-2.10(d)(1).
In addition, Plaintiff contends that the declarant, Envine, failed to reserve the right to withdraw the Withdrawn Parcels by failing to follow the Condominium Act's requirements for condominium plots and plans. The Condominium Act requires that: *Page 10 
 "Each plat must show: (1) The name and a boundary survey of the entire condominium; (2) The location and dimensions of all real estate not subject to development rights, or subject only to the development right to withdraw, and the location and dimensions of all existing improvements within that real estate; (3) A legally sufficient description of any real estate subject to development rights, labeled to identify the rights applicable to each parcel. . . ." Section 34-36.1-2.09(b)
Plaintiff also claims that the Commissioner's Comment to this section offers guidance on this issue:
 "Subsection (b)(3) requires that the real estate which is subject to development rights must be identified with a legally sufficient description, that is, either a metes and bounds description, or reference to the deeds of that real estate. Since different portions of the real estate may be subject to differing development rights — for example, only a portion of the total real estate may be added as well as withdrawn from the project — the plan must identify the rights applicable to each portion of that real estate. The same reasoning applies to the legally sufficient description of easements affecting the condominium and any leasehold real estate." Section 34-36.1-2.09 cmt. 5.
Plaintiff argues that the Withdrawn Parcels were never sufficiently described as being subject to the withdrawal right.
Finally, Plaintiff alleges that American Condominium Assoc. v. IDC,Inc., 844 A.2d 117 (R.I. 2004) is controlling in the instant matter. InAmerican Condominium Assoc., the declarant sought to extend the time limit to exercise his development rights. Our Supreme Court held that to do so required the unanimous consent of the unit owners pursuant to the requirements of § 34-36.1-2.17 of the Condominium Act. In pertinent part, the section provides:
 "Except to the extent expressly permitted or required by other provisions of this chapter, no amendment may create or increase special declarant rights, increase the number of units, change the boundaries of any unit, the allocated interests of a unit, or the uses to which any unit is restricted, in the absence of unanimous consent of the unit owners." Section 34-36.1-2.17(d). *Page 11 
Plaintiff avers that Envine's withdrawal and transfer of the Withdrawn Parcels "changed the boundaries" of a unit and, therefore, required unanimous consent of the unit owners.
In responding to Plaintiff's arguments, Defendant does concede that the Declaration did not actually describe any specific portion of the Condominium Property that was subject to withdrawal and that rather, it stated that the declarant had the right to withdraw any real estate from the Condominium Property. However, Defendant suggests that the Declaration, read together with § 34-36.1-2.10(d)(2), stands for the proposition that a withdrawal may be accomplished by the declarant within a portion or sub phase of the Condominium Property, without additional approvals, "provided that no units had been conveyed to a purchaser within the affected sub phase." Def's Mem. in Opp'n to Pl's Mot. for Summ. J. and Countermot. for Sum. J. Defendant alternatively argues that, at the very least, there is a question of fact as to whether the withdrawal was valid pursuant to the Declaration and the Condominium Act.
This Court finds the language of § 34-36-1-2.10(d) to be clear and unambiguous. The Condominium Act clearly states that if all the land is subject to withdrawal, as Defendant admits is the case here, none of the real estate may be withdrawn after a unit has been conveyed to a purchaser. Because a number of units had been conveyed to purchasers prior to the purported withdrawal, the declarant, Envine, no longer retained the power to withdraw. Thus, its withdrawal and attendant transfer was invalid. Defendant's suggestion that a declarant may withdraw real estate within a sub phase, if no units in that sub phase have been sold, is contrary to the clear directive of the statute.
Defendant additionally argues that even if this Court finds the actual withdrawal to be invalid, it should still be considered the record owner of the Withdrawn Parcels as a result of the *Page 12 
statute of limitations for challenging the actions of a declarant. Defendant cites to § 34-36.1-2.17(b) and argues that it provides a one-year statute of limitations for actions challenging the validity of a declarant's amendatory actions.[6] Defendant claims that because Plaintiff did not bring this action within one year of Envine's withdrawal, Plaintiff is estopped from alleging that the withdrawal was improper. Defendant's reliance on this statute is misplaced.
As noted above, in American Condominium Assoc., the defendant, a successor declarant, argued that the plaintiff's challenge to amendments by a prior declarant was not timely filed pursuant to § 34-36.1-2.17(b). Our Supreme Court disagreed with the defendant and upheld the trial justice's grant of summary judgment on the issue, holding that ". . . when, as here, the amendment being challenged is determined to be voidab initio, the one-year statute of limitations does not apply to any subsequent action taken by an interested party." American CondominiumAssoc., 844 A.2d at 133 (citing Theta Properties v. Ronci RealtyCo., 814 A.2d 907 (R.I. 2003)). In the instant matter, Plaintiff has successfully raised an ab initio challenge as a result of the Court's within holding that Envine improperly withdrew the Withdrawn Parcels. Defendant's argument that Plaintiff is barred by the one-year statute of limitations fails as a matter of law. Accordingly, the Court finds that Envine's purported withdrawal and conveyance of the Withdrawn Parcels from the Condominium Property was without authority and void.
 B Adverse Possession
Defendant, however, argues that even if the transfer of the Withdrawn Parcels was invalid, it is nonetheless entitled to possession of the parcels under the theory of adverse possession. In support of this claim, Defendant alleges that there exists no genuine issue of *Page 13 
material fact as to its actual and continuous possession of the Withdrawn Parcels for the requisite statutory period.
Our Supreme Court has long held that ". . . to establish adverse possession, a claimant's possession must be `actual, open, notorious, hostile, under claim of right, continuous, and exclusive' for at least ten years." Tavares v. Beck, 814 A.2d 346, 350 (R.I. 2003) (citations omitted). "The party claiming adverse possession must establish each of these elements by strict proof, that is, proof by clear and convincing evidence." Id. In this instant, the primary issue to be addressed by this Court is what time period should be considered in determining whether the elements of adverse possession have been satisfied. This Court will address each of the parties' arguments with respect to this issue.
Defendant, in support of its claim, argues that it has satisfied the elements of adverse possession of the Withdrawn Parcels for a period in excess of the requisite ten years, particularly since before severance of the Original Parcel in 1989. Thus, Defendant appears to be arguing that the time-clock for adverse possession should start at some unidentified point, prior to 1989. The Court disagrees. As this Court stated above, when it considered acquiescence of the Area of Encroachment, the events that occurred prior to the severance of the Original Parcel are irrelevant. In order to consider any period of time as qualifying for the maturation of an adverse possession claim, another person must own the parcel over which the claim is advanced. Plainly, one cannot adversely possess that which one owns. "It is axiomatic that where a party is in actual possession, and has a right to possession under a legal title which is not adverse, but claims the possession under another title which is adverse, the possession will not in law be deemed adverse." St. Jean Place Condominium Association v. DeLeo,745 A.2d 738, 742 (R.I. 2000) (citations omitted); see also 3 Am. Jur. 2dAdverse Possession § 50 (1986) ("[a] *Page 14 
possession that is in law rightful and not an invasion of the rights of others is never deemed to be adverse"). As, such this Court finds Defendant's argument respecting the time period for calculating adverse possession to be unmeritorious.
In the alternate, Plaintiff advances two arguments with respect to the proper time period to be considered when determining whether Defendant adversely possessed the Withdrawn Parcels. In advancing both these arguments, Plaintiff operates on the assumption that the time-clock for adverse possession should begin running on the date of severance of the Original Parcel, May 1, 1989.
Plaintiff's first argument is based on the Notice of Intent, which it filed on April 14, 1999. Plaintiff contends that the Notice of Intent disrupts Defendant's claim for adverse possession of the Withdrawn Parcels by effectively stopping the time-clock on April 14, 1999. This argument is unavailing. Certainly, it is true that a claim for adverse possession may be interrupted by the filing of a notice of intent. Expressly, our Supreme Court has explained that there are:
 "three methods by which a record owner can interrupt a claimant's adverse possession: (1) filing of an action to quiet title; (2) filing of `notice of intent to dispute' adverse possession under § 34-7-6; and (3) physical ouster of the claimant or a `substantial interruption' of the claimant's possession by the record owner." Carnevale v. Dupee, 783 A.2d 404, 410 (2001) (citations omitted). (Emphasis added.)
However, in the instant matter, the Notice of Intent filed by Plaintiff refers only to the Area of Encroachment and makes no mention of the Withdrawn Parcels. Specifically, the Notice of Intent states:
 "Notice is hereby given by the Washington Village Country Club and Residency Condominium Association, pursuant to R.I.G.L. 34-7-6 that it intends to dispute any right arising from any claim or use that may be made by Par Four, Inc., a Rhode Island *Page 15 
Corporation, or its successors, heirs, or assigns, resulting from an encroachment by Par Four, Inc. upon the Washington Village Country Club and Residency Condominium parcel, as referenced on the attached `Property Line Plan for Washington Village Condominiums,' which is labeled Exhibit `A' incorporated herein. The plan referenced herein, prepared by R. C. Cournoyer Enterprises, Inc., dated November 17, 1999 and revised on April 12, 1999, discloses an encroachment of certain golf course improvements upon the Washington Village Country Club and Residency Condominium Parcel by Par Four, Inc." Notice of Intent to Dispute Interrupting Adverse Possession, dated April 14, 1999.
Thus, because the Notice of Intent does not refer to the Withdrawn Parcels, Plaintiff's reliance on such to interrupt Defendant's adverse possession claim is misplaced.
The second argument advanced by Plaintiff involves the import of the withdrawal and conveyance of the Withdrawn Parcels on November 14, 1997. Specifically, Plaintiff claims that this conveyance constituted a grant of permission by Envine for the owner of the golf course to use the Withdrawn Parcels. Thus, Plaintiff alleges that the withdrawal and concomitant conveyance effectively broke the ten-year statutory period of adverse possession. This Court is not of similar opinion.
In Sleboda v. Heirs at Law of Harris, 508 A.2d 652 (R.I. 1986), our Supreme Court was faced with a similar argument to that advanced by Plaintiff. In Sleboda, the defendant argued that the possessor's entry upon land by a tax sale deed, albeit for a period of time well in excess the requisite ten years, did not qualify as adverse possession. In rejecting the defendant's argument, our Supreme Court found that the statutes which address adverse possession:
 "were not designed solely for the protection of trespassers and tortious disseisors (although such persons may have benefited from the statute of limitations) but were designed to quiet the title of individuals who had acquired title by deed but whose deeds were in some way defective." Id. at 655. *Page 16 
Thus, our Supreme Court concluded that it "reject[ed] the argument that one who enters upon real estate by deed, as opposed to tortious disseisin, may not have the benefit of quieting his [or her] title by adverse possession." Id. In light of this, it is clear that Plaintiff is incorrect when it argues that an entry by deed of Par Four upon the Withdrawn Parcels destroys Defendant's adverse possession claim.
While the Court is not persuaded by Plaintiff's above argument, this Court does find legal significance in the conveyance of the Withdrawn Parcels. As stated above, in order to satisfy the requirements of adverse possession a claimant must establish, among other things, that it possessed the disputed property under a "`claim of right. . . . for at least ten years.'" Tavares, 814 A.2d at 350 (citations omitted). Our Supreme Court has stated that "[p]ossession under a claim of right means that the entry by the claimant must be in accordance with a claim to the property as the claimant's own with the intent to hold it for the entire statutory period without interruption." Id. at 351 (quoting 16Powell on Real Property, § 91.05[4] at 91-28 (2000)). Furthermore, "a claim of right may be proven through evidence of open, visible acts or declarations, accompanied by use of the property in an objectively observable manner that is inconsistent with the rights of the record owner." Id.
In this instant, Defendant's predecessor, Par Four, attempted to purchase the Withdrawn Parcels from Envine for valuable consideration in the approximate amount of $50,000.[7] This appears to have been neither a formal nor perfunctory transfer, whereby Par Four was merely attempting to formalize its right to the Withdrawn Parcels. Rather, in this Court's opinion, it is *Page 17 
clear that Par Four was endeavoring to divest Envine of title to the Withdrawn Parcels. Such action necessarily constitutes recognition by Par Four that it neither had, nor was advancing, any claim of right over the Withdrawn Parcels prior to the purchase. As such, Defendant can not establish a claim of adverse possession at any time prior to the date of attempted conveyance in 1997. Thus, the time-clock could not have started to run, if at all, until November 14, 1997. Because the within action was filed on June 22, 2005, it is clear that Defendant cannot satisfy the requisite ten-year statutory period for adverse possession. Accordingly, this Court finds that Defendant does not hold title to the Withdrawn Parcels pursuant to a theory of adverse possession.
As Defendant has failed to satisfy the requirements of adverse possession and because this Court found Envine's purported withdrawal and conveyance to be invalid, Plaintiff is entitled to summary judgment on Count IX of its amended complaint.
 V The Fairway Drive and Mashie Circle Easements A The Express Easements
The express easements at issue in this case, namely the Fairway Drive Easement and the Mashie Circle Easement, afford Defendant and its patrons access to various portions of the Golf Course Property. Plaintiff contends that these easements are invalid and thus, Defendant and its patrons have no right to utilize them.[8] In support of this claim, Plaintiff advances two main arguments. First, Plaintiff claims that the granting of the two easements violated the requirements of the Condominium Act. Expressly, Plaintiff maintains that under the Condominium Act, the granting of an easement that burdens the common elements is void unless *Page 18 
the transfer is permitted by way an 80% approval vote of the members of the condominium association. See § 34-36.1-3.12. Plaintiff claims that Envine never sought such approval when establishing the disputed easements. Secondly, Plaintiff argues that the Fairway Drive Easement and the Mashie Circle Easement violate the express language of the Declaration. Specifically, Plaintiff argues that the easements violate Article 5.4, which provides that a declarant may grant an easement that is ". . . necessary for the development or improvement of the Property." Declaration of Condominium for Washington Village Country Club and Residency, art. 5.4(d), dated June 23, 1989 (emphasis added). Plaintiff contends that the easements were not necessary for the development or improvement of the Condominium Property and that the easements burden the Condominium Property while benefiting only the Golf Course Property. Accordingly, Plaintiff seeks a grant of summary judgment as to Counts III and VIII of its amended complaint.
Defendant counters Plaintiff's first argument, with respect to compliance with the Condominium Act, by claiming that Plaintiff has offered no facts, affidavits, or voting records to substantiate its claim that an 80% approval vote was not obtained. Regarding Plaintiff's second argument, Defendant disputes Plaintiff's assertion that the easements are not "necessary" as required by the Declaration. In particular, Defendant argues that the disputed easements not only benefit the Golf Course Property, but also the Condominium Property. Defendant also notes that municipal approval of the project was premised on the shared entry and access driveway, common rights-of-way, and a readjustment of the layout of the golf course.
Because this Court finds that, as a matter of law, the granting of the Fairway Drive Easement and the Mashie Circle Easement violated the terms of the Condominium Act, it is unnecessary for the Court to address Plaintiff's second argument respecting the Declaration. *Page 19 
The Condominium Act states that:
 "Portions of the common elements may be conveyed or subjected to a security interest or mortgage by the association if persons entitled to cast at least eighty percent (80%) of the votes in the association, including eighty percent (80%) of the votes allocated to units not owned by a declarant, or any larger percentage the declaration specifies, agree to that action; but all the owners of units to which any limited common element is allocated must agree in order to convey that limited common element or subject it to a security interest or mortgage. The declaration may specify a smaller percentage only if all of the units are restricted exclusively to nonresidential uses. Proceeds of the sale are an asset of the association." Section 34-36.1-3.12(a).
In addition, the above section provides that "Any purported conveyance, encumbrance, judicial sale or other voluntary transfer of common elements, unless made pursuant to this section, is void." Section34-36.1-3.12(d). Although on its face, this statute appears only to be addressing conveyances "by the association," this Court turns to the Commissioner's Comment for further guidance. It states:
 "Subsection (a) provides that, on agreement of unit owners holding 80% of the votes in the association, parts of the common elements may be sold or encumbered. (80% is the percentage required for termination of the condominium under Section [34-36.1-2.18].) This power may be exercised during the period of declarant control, but, in order to be effective, 80% of non-declarant unit owners must approve the action." Section 34-36.1-3.12 cmt. 5.
As the conveyance of the disputed easements took place during a period of declarant control, it is clear that Envine was required to obtain an 80% approval by the non-declarant unit owners. It appears that Envine failed to obtain the requisite approval and as such, the purported transfer of the express easements in favor of Par Four was invalid.[9]
Accordingly, this Court *Page 20 
finds that the express easements granted to Defendant's predecessor, namely the Fairway Drive Easement and the Mashie Circle Easements, are void as a matter of law. As stated above, it is unnecessary for this Court to decide whether the easements also violated the Declaration. Plaintiff is entitled to partial summary judgment on Counts III and VIII of its amended complaint.
 B Easement by Prescription
In spite of the above, Defendant argues that it possesses the right to use Fairway Drive and Mashie Circle as a result of certain equitable theories. Specifically, Defendant claims that it possesses an easement by prescription and an easement by necessity over Fairway Drive and Mashie Circle.[10] The Court will now address these claims.
Defendant advances the claim of an easement by prescription over Fairway Drive and Mashie Circle in Count V of its counterclaim.[11] An easement is defined as "[a]n interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose." Black's Law Dictionary 414 (7th ed. 2000). An easement by prescription is specially defined as "[a]n easement created from an open, adverse, and continuous use over a statutory period." Id. at 416. Our Supreme Court has explained that "[o]ne who claims an easement by prescription bears the burden of establishing actual, open, notorious, hostile, and continuous use under a claim of right for at least ten years." Stone v. *Page 21 Green Hill Civic Ass'n, Inc., 786 A.2d 387, 389 (R.I. 2001). Further, "[t]he determination of whether or not a claimant has satisfied the burden of proving each of these elements by clear and satisfactory evidence involves an exercise of the fact-finding power." Id. at 389 — 390.
Defendant argues that it, along with its predecessors, have adversely and continuously used and occupied Fairway Drive and Mashie Circle since, and in some cases prior to, the time that the golf course was approved and configured. Defendant further notes that an adverse claimant may tack on the period of possession of his predecessor from whom he has derived title.[12] In support of its position, Defendant relies on the affidavits of Mr. Votolato, an employee of Defendant, and Mr. DiPadua, a regular member of the golf course. Both affiants generally aver that since the golf course was first built and began operating, the land upon which Defendant now seeks an easement was continuously used by the golf course patrons. Plaintiff responds to Defendant's argument by again relying on its Notice of Intent. Plaintiff argues that the filing of such notice interrupted any possible claim by Defendant under the theory of easement by prescription.
This Court finds that Plaintiff's reliance on the filing of its Notice of Intent must fail here for the same reason it failed to defeat Defendant's adverse possession claim to the Withdrawn Parcels. The Notice of Intent exclusively refers to the Area of Encroachment, and mentions neither the Fairway Drive Easement nor the Mashie Circle Easement. As a result, Plaintiff cannot rely solely on the Notice of Intent to defeat Defendant's easement by prescription claim.
However, as stated above, a claim of easement by prescription requires findings of fact. See Gardner v. Baird, 871 A.2d 949, 954 (R.I. 2005) (citing Stone v. Greenhill Civic Ass'n, Inc., 786 A.2d 387, 391 (R.I. 2001) ("Factual determinations are generally necessary to determine *Page 22 
whether the claimants have established the elements of a prescriptive easement.") While Defendant has provided some evidence regarding its claim in the form of affidavits, such a scant amount of evidence cannot be considered sufficient to satisfy the elevated standard of proof required with regard to each element of a prescriptive easement claim.[13] Accordingly, the issue cannot properly be decided by way of summary judgment at this time. Thus, summary judgment as to Count V of Defendant's counterclaim is denied.
 C Easement by Implication
In Count VI of its counter-claim, Defendant claims an easement by implication over Fairway Drive and Mashie Circle. An easement by implication is "an easement not expressed by the parties in writing, but arising out of the existence of certain facts implied in the transaction." 25 Am. Jur. 2d Easements § 19 (2004). Our Supreme Court has recognized that an implied easement may arise in the following circumstances: (1) from a "pre-existing condition," also known as a "quasi easement," Wiesel v. Smira, 49 R.I. 246, 248-49, 142 A. 148, 149
(1928); see also Catalano v. Woodward, 617 A.2d 1363, 1367 (R.I. 1992); (2) "by necessity," Bovi v. Murray, 601 A.2d 960, 962 (R.I. 1992);see also Nunes v. Meadowbrook Dev. Co., Inc., 824 A.2d 421, 425 (R.I. 2003); or (3) "by reference to a map or plat," Kotuby v. Robbins,721 A.2d 881, 883-84 (R.I. 1998). It is well-settled in this jurisdiction that the party claiming the benefit of an implied easement must demonstrate its existence by clear and convincing evidence. Mattos v.Seaton, 839 A.2d 553, 557 (R.I. 2004). The Court will now address the three types of implied easements in seriatim. *Page 23 
 1 Preexisting or Quasi Easement
A quasi easement, or easement by preexisting use or condition, is an implied grant of an easement based on the presumed intent of the parties upon the severance of common ownership. See Wiesel, 49 R.I. at 248-49,142 A. at 149. As one commentator noted, this situation arises:
 "where a property owner has used one part of a single piece of property for the benefit of another part of the property, and then divides the property, the possessor of the previously benefited portion of the land may also possess an easement over the previously burdened part of the property." 7 Thompson on Real Property, The Law of Easements, § 60.03(b)(4) (1994).
Stated differently, "[t]o create an easement by implication from a preexisting use imposed on one part of the property for the benefit of another part, there must be unity of title and a subsequent severance thereof." 25 Am. Jur. 2d Easements § 25 (2004). Additionally, "the property must have been openly used in a manner constituting a quasi-easement while it was in a single ownership." Id. When the property is divided, it is presumed that the common grantor intended that the quasi easement continue as a true easement. Id. The presumption is based upon the theory that "the parties contracted with a view to the condition of the property as it actually was at the time of the transaction." Id. at § 24. Following these principles, our Supreme Court has held that "upon the severance of a heritage, a grant will be implied of all those continuous and apparent easements which have in fact been used by the owner during the unity, though they have no legal existence as easements." Catalano, 617 A.2d at 1367. *Page 24 
In the instant matter, it is undisputed that the Original Parcel was under unity of title until the division that created the Condominium Property occurred.[14] Our Supreme Court has held that "[a] quasi easement arises out of circumstances from which the court finds an indication of the probable intention of the parties." Wiesel,49 R.I. at 250, 142 A. at 150. Whether, upon severance of the Original Parcel, the parties intended that an easement arise granting the golf course owner an easement to use Fairway Drive or Mashie Circle, is a question of fact. Accordingly, summary judgment cannot be granted pursuant to this theory.
 2 Implied Easement by Necessity
Defendant also argues that it possesses an implied easement by necessity to use Fairway Drive and Mashie Circle. As to necessity, Defendant argues that at the time of severance of the Original Parcel, Fairway Drive provided the sole means of access to its clubhouse and utility barn. Defendant also argues that without use of Mashie Circle, its golfers cannot travel between holes, and a substitute route would involve unreasonable trouble and expense.
Plaintiff counters by suggesting that an easement by necessity usually arises when a conveyance will result in either the granted or retained parcel being landlocked, and in such a situation, the easement is necessary for the claimant to access the outside world. Plaintiff argues that Defendant merely claims a necessity based on convenience and comfortable enjoyment of the Golf Course Property. Plaintiff further alleges that because Defendant already enjoys unrestricted access to and from the golf course, Defendant has not shown the requisite necessity that would validate the granting of any easement. Plaintiff also cites to Weisel, wherein the *Page 25 
Court held that "no necessity can exist and consequently no easement be implied where a substitute can be procured without unreasonable trouble or expense." Weisel at 250, 142 A. at 150.
Both Plaintiff and Defendant misstate the requirements and oversimplify the issue of whether an implied easement by necessity exists in this case. Our Supreme Court has held:
 "[w]hether an easement exists by necessity is a question of fact. This Court has held, a trial justice sitting as a fact-finder is charged with the duty to draw inferences from established facts and that his or her conclusion will be accepted by this Court if the inference he [or she] drew was reasonable even though other equally reasonable inferences might have been drawn. This Court has ruled that the test of necessity is whether the easement is reasonably necessary for the convenient and comfortable enjoyment of the property as it existed when the severance was made. Moreover, this Court should consider whether a substitute could be procured without unreasonable trouble or expense." Nunes v. Meadowbrook Dev. Co., 824 A.2d 421, 425
(R.I. 2003) (internal citations omitted).
Additionally, "the burden of proving that an alternative mode of access is not available is on the person claiming the easement by necessity." 25 Am. Jur. 2d Easements § 37 (2004).
It is clear that when the severance of the Original Parcel occurred, substantial portions of what became the Condominium Property were in use by Defendant's predecessors and its patrons. Whether an easement by necessity over Fairway Drive or Mashie Circle was created upon this division is an issue of fact. Plaintiff's argument that an easement by implication or necessity cannot be found with respect to Fairway Drive and Mashie Circle because such roads did not exist at the time of the severance is unavailing. The mere fact that the paths traveled may not have been paved, or named as such, is irrelevant to the issue. Additionally, whether substitute access can be procured by a reorientation of the golf course without reasonable trouble or expense, or whether such expense would be unduly troublesome and unreasonable, is a *Page 26 
question of fact to be decided at trial. Thus, summary judgment cannot be granted pursuant to this theory.
 3 Implied Easement by Reference to a Map or Plat
Defendant claims that the rights-of-way and interior paths leading to its clubhouse and barn, and the paths between the golf course's holes and tees in proximity to Mashie Circle are memorialized on the original platted subdivision of the land. Thus, Defendant concludes that as a matter of law it retains the right to use those referenced rights-of-way. In support of this argument, Defendant cites toKotuby v. Robbins, 721 A.2d 881 (R.I. 1998) and Bitting v. Gray,897 A.2d 25 (R.I. 2006). Defendant relies on both cases for the proposition that when a lot is sold by reference to a plat, there is an implied preservation of those rights of ways that are referenced.
In Bitting our Supreme Court found that:
 "When a property owner subdivides land and sells lots with reference to a plat, he [or she] grants easements to the purchasers in the roadways shown on the plat, with or without later dedication of the roadways to the public. In the absence of dedication to the public, the easement depicted on the plat is appurtenant to the property and passes with the conveyance of the property, unless specifically excluded, even though not mentioned in the deed." Id. at 32 (citations omitted).
Further, our Supreme Court went on to state that "[d]isputes surrounding easements over roads depicted on recorded plats, `should rise or fall by reference to the plat on which the disputed parcel is depicted.'"Id. at 32 (quoting Newport Realty, Inc. v. Lynch, 878 A.2d 1021, 1042
(R.I. 2005). In light of the above, it is clear that in order to make a proper inquiry under this theory, *Page 27 
one must focus on what is actually depicted on the recorded plat. In the instant matter, Defendant does claim to have submitted the original subdivision plan for the Original Parcel as an exhibit. However, there were multiple plans submitted as exhibits and it is unclear which plan Defendant is referencing.[15] Notwithstanding this confusion, this Court does not believe that it can properly determine what is actually referenced on the plat without a knowledgeable witness testifying to the same. As such, whether an easement by reference to a map or plat exists is an issue of fact to be determined at trial. Summary judgment cannot be granted on this theory.
 VI Conclusion
After reviewing the numerous memoranda and exhibits submitted in support of each party's motions for summary judgment, this Court grants certain motions in part and denies all remaining motions.[16] In particular, Plaintiff is entitled to a grant of summary judgment as to Count II of its amended complaint, which seeks a declaration that Plaintiff owns the Area of Encroachment. Additionally, Plaintiff is entitled to a grant of summary judgment on Count IX of its amended complaint, which seeks declaratory relief regarding the ownership and use of the Withdrawn Parcels. With respect to Counts III and VIII of Plaintiff's amended complaint, which seek declaratory relief relating to the use of Fairway Drive and Mashie Circle, Plaintiff is entitled to a grant of partial summary judgment. Specifically, this Court finds that the express easements known as the Fairway Drive Easement and the Mashie Circle Easement, granted by Envine to *Page 28 
Par Four, are void and invalid. Whether Defendant has the right to use Fairway Drive or Mashie Circle pursuant a theory of easement by prescription, implication, or reference to a map or plat is an issue of fact to be decided at trial. Counsel shall submit an appropriate order for entry in accordance with this Decision.
[1] This inconsistency is the basis for one of the property disputes, which Plaintiff and Defendant are attempting to adjudicate. This issue will be discussed more fully infra.
[2] Fleet National Bank had previously foreclosed against W.P. Associates on the Condominium Property.
[3] The survey was conducted by R.C. Cournoyer Enterprises, Inc. and dated April 12, 1999.
[4] The Defendant failed to address the first three counts of its counter-claim in its memorandum of law and, therefore, the Court will not address those counts in this Decision.
[5] Article 12.1 provides: "The Declarant reserves to itself and for the benefit of its successors and assigns, pursuant to Section34-36.1-2.05(a)(8) of the Act, the right to create new Units as per ARTICLE 2, Section 2.2 of this Declaration, to create new Common Elements or Limited Common Elements within the Condominium or alter existing ones, to sub-divide or convert Units into the Common Elements, to withdraw real estate from the property of the Condominium and any and all other Development Rights as are now allowed or in the future may be allowed by the Act. The Declarant also reserves to itself and for the benefit of its successors and assigns, all of the `Special Declarant Rights' delineated under Sections 34-36.1-1.03(23), including, but not limited to the right to complete all improvements shown on `Exhibit B,' annexed hereto, to exercise the Development Rights set forth above, to maintain models and sales offices and to exercise the easements as set forth in ARTICLE 5 hereof, to make the Condominium part of a larger Condominium, to make the Condominium subject to a master association, to appoint or remove any officer or Executive Boardmember during any period of Declarant control of the Association and any and all other Special Declarant Rights as are now allowed or in the future may be allowed by the Act. Development Rights and Special Declarant Rights must be exercised within 10 years from the date this Declaration was recorded or such earlier time as the right to do so expires pursuant to the terms hereof or the Act, as applicable, or is terminated by the Declarant." Declaration of Condominium for Washington Village Country Club and Residency, art. 12.1, dated June 23, 1989.
[6] Section 34-36.1-2.17(b) provides that "[n]o action to challenge the validity of an amendment adopted by the association pursuant to this section may be brought more than one year after the amendment is recorded."
[7] The quitclaim deed evidencing the transfer of the Withdrawn Parcels was attached as part of "Exhibit 3" to Plaintiff's "Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment." The deed contained a stamp indicating that a tax of $140 had been paid as part of the transaction. The amount of tax imposed on a deed is dictated by our General Laws, specifically § 44-25-1. In 1997, this section provided that "when the consideration paid exceeds one hundred dollars ($100), a tax at the rate of one dollar and forty cents ($1.40) for each five hundred dollars ($500) or fractional part thereof" shall be paid by the grantor. Section. 44-45-1(a) (1997). Thus, a tax in the amount of $140 indicates a purchase price somewhere between $49,501 and $50,000.
[8] Plaintiff states that it is undisputed that it alone owns and maintains Fairway Drive and Mashie Circle, over which Defendant claims the disputed easements.
[9] As noted in the body of this Decision, Defendant argued that the Plaintiff offered no facts, affidavits, or voting records to substantiate its claim that Envine never obtained the required 80% approval. This inappropriately suggests that the burden is on Plaintiff to show that Envine did not procure the necessary approval. Implied within subsection (d) of § 34-36.1-3.12 is the fact that the burden is on the entity seeking the benefit of the encumbrance, here the Defendant, to show compliance with the statute. See Mattos v.Seaton, 839 A.2d 553, 557 (R.I. 2004) (". . . the party claiming the benefit of an [implied] easement must demonstrate its existence by clear and convincing evidence.").
[10] Count VI of Defendant's counterclaim is entitled "Declaratory Judgment — Easement by Necessity." However, in its brief, Defendant uses the broader term "easement by implication" and the narrower term "easement by necessity" interchangeably.
[11] In Count V, Defendant asserts a prescriptive easement solely over the areas known as the Fairway Drive Easement and the Mashie Circle Easement. However, in its memorandum of law, Defendant at one point appears to imply that it is also claiming a prescriptive easement over the Withdrawn Parcels. This issue is not further briefed nor mentioned again. Thus, this Court will not address such claim, if any does indeed exist. In the event that it is Defendant's intention to advance such argument, this Court would find that whether Defendant is entitled to a prescriptive easement over the Withdrawn Parcels is an issue of fact.
[12] Tacking — "the joining of consecutive periods of possession by different persons to treat the period as one continuous period"Black's Law Dictionary 1465 (7th ed. 1999) — is permitted under § 34-7-1 and has been recognized by our Supreme Court. SeeTaffinder v. Thomas, 199 R.I. 545, 381 A.2d 519 (1977).
[13] "It is firmly established that one who claims an easement by prescription bears the burden of establishing actual, open, notorious, hostile, and continuous use under a claim of right for at least ten years." McAusland v. Carrier, 880 A.2d 861, 863 (R.I. 2005).
[14] Plaintiff notes such fact in support of its argument against Defendant's claim for adverse possession. However, curiously, Plaintiff later argues that there was no unity of title and, therefore, there can be no implied easement. Specifically, Plaintiff claims that when Envine purportedly granted the easements in 1997, it did not own either the Golf Course Property or the Condominium Property and, in fact, only retained development rights and special declarant rights. The Court finds Plaintiff's argument to be without merit. The relevant time for determining if an implied easement was created is May of 1989 when the Original Parcel was severed.
[15] In its memorandum, Defendant cites to "Exhibit 4" as containing the subdivision plan. However, this exhibit actually contains the "Golf Course/Condominium Proposal" that was submitted to the Town of Coventry.
[16] Both parties to this action submitted multiple memoranda in support of their motions for summary judgment. Countless arguments were raised within the memoranda and at oral argument. While most arguments were thoroughly briefed, some were presented with a "kitchen sink" approach and were either insufficiently supported or not supported at all. The Court considered all arguments raised by both parties in rendering this decision. Certain arguments that were briefly raised in the memoranda were not addressed in this Decision. The Court deemed these arguments inconsequential and not requiring discussion. SeeWilkinson v. State Crime Laboratory Comm'n, 788 A.2d 1129, 1131 n. 1 (R.I. 2002) (Noting that raising arguments but failing to brief them properly and not giving a meaningful discussion "does not assist the Court in focusing on the legal issues raised").